[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 09-14739

_____

D. C. Docket No. 09-22384 CV-AJ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 26, 2010
JOHN LEY
CLERK

BANK OF AMERICA NATIONAL
ASSOCIATION,

Plaintiff-Appellee,

versus

COLONIAL BANK, et al.,

Defendants,

FEDERAL DEPOSIT INSURANCE
CORPORATION,

Defendant-Appellant.

_____

No. 09-14844

_____

D. C. Docket No. 09-22384 CV-AJ

IN RE:

FDIC,

Petitioner.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 26, 2010)

Before O'CONNOR,[*] Associate Justice Retired, CARNES and ANDERSON,
Circuit Judges,

ANDERSON, Circuit Judge:

This case arises from the collapse of Colonial Bank ("Colonial"), the fifth-

largest bank failure in the near 77-year history of the Federal Deposit Insurance

Corporation ("FDIC"). Bank of America, N.A. ("Bank of America"), brought this

action against Colonial, alleging it wrongfully refused to return thousands of

mortgage loans and their proceeds, valued in excess of $1 billion, to which Bank of

America had legal title. On August 13, 2009, the district court entered a temporary

restraining order ("TRO") against Colonial, prohibiting the bank from taking any

action with respect to the disputed assets. The next day, the FDIC was appointed

as receiver for Colonial, and was promptly substituted as defendant in this case.

Thereafter, the district court converted the TRO into a preliminary injunction

against the FDIC, rejecting the FDIC's arguments that the district court lacked

_____

[*] Honorable Sandra Day O'Connor, Associate Justice (Retired) of the United States
Supreme Court, sitting by designation.

2

jurisdiction to enjoin the FDIC as receiver and that Bank of America must first exhaust the administrative claims process prior to seeking a judicial remedy. The FDIC filed both a timely appeal of the district court's preliminary injunction order and a petition for a writ of mandamus to dissolve the district court's preliminary injunction. We consolidated the two actions and expedited this appeal.

Our inquiry in this case is limited to the threshold question of subject matter jurisdiction. The FDIC argues that the anti-injunction provision of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §1821(j), deprived the district court of jurisdiction to enjoin the FDIC because the preliminary injunction unlawfully restrained the FDIC's exercise of its receivership powers and functions. Because we conclude that the FDIC's proposed actions with respect to the loans and loan proceeds at issue fall squarely within its statutory receivership powers and functions, we hold that 12 U.S.C. § 1821(j) stripped the district court of its jurisdiction to enter the preliminary injunction. Accordingly, we vacate the district court's order and remand with instructions to dismiss Bank of America's motion for a preliminary injunction for lack of jurisdiction.

I. FACTS AND PROCEDURAL HISTORY

The loans and loan proceeds at issue in this case originated from a series of

June 2008 agreements between LaSalle Bank N.A. ("LaSalle"), Ocala Funding, LLC ("Ocala"), and Taylor, Bean & Whitaker Mortgage Corp. ("Taylor Bean"). LaSalle, representing certain secured parties as their custodian and collateral agent, provided capital for Ocala to purchase various mortgage notes originated and serviced by Taylor Bean for the benefit of the secured parties. Bank of America, as LaSalle's successor-in-interest, became the trustee and collateral agent for the secured parties and perfected its security interest by taking possession of the loans and loan documents.

From June to August 2009, Bank of America then issued a series of Transmittal Letters to Colonial, which provided notice of its security interest in the loans and established that Bank of America would deliver the loans to Colonial and in return Colonial would hold the loans in trust and serve as custodian, agent, and bailee for and on behalf of the secured parties. Under the agreement, Colonial was also obligated to facilitate the sale of the loans to Freddie Mac. Upon Colonial's receipt of the loans, it had fifteen days either to remit sale proceeds or return unsold loans to Bank of America. Freddie Mac, in connection with its purchase of more than 6,000 of these loans, delivered over $1 billion in loan proceeds to Colonial.

In early August 2009, with the news of Colonial's demise spreading, Bank of America requested that Colonial return the loans and loan proceeds. When

4

Colonial refused, Bank of America presented Colonial with a Demand for Documents and Proceeds, which attempted to revoke the governing Transmittal Letters and terminate Colonial's rights to continued possession of the loans. Colonial again refused to comply with Bank of America's demand. On August 12, 2009, Bank of America filed its complaint in federal court, setting forth five causes of action—replevin, imposition of constructive trust, breach of bailee letters, unjust enrichment, and civil theft—and filed an accompanying motion for a TRO and preliminary injunction against Colonial.

On August 13, 2009, the district court granted Bank of America's motion, issued an ex parte TRO, and enjoined Colonial from selling, pledging, assigning, liquidating, encumbering, transferring, or otherwise disposing of all or any portion of the loans and loan proceeds related to the loans. The following day, the Alabama State Banking Department appointed the FDIC as receiver for Colonial, and the FDIC subsequently moved to be substituted for Colonial in this lawsuit. On August 21, 2009, the FDIC filed an emergency motion to dissolve the TRO, arguing that 12 U.S.C. § 1821(j) stripped the court of jurisdiction to restrain or affect the exercise of its powers or functions as receiver. In its motion, the FDIC asserted that Bank of America could pursue its claim through the administrative claims procedures set forth in FIRREA. See 12 U.S.C. § 1821(d)(3)–(13). In

response, Bank of America argued that it was not a creditor subject to the claims administration process; that the loans never belonged to Colonial and were therefore not a part of the receivership estate; and, thus, that § 1821(j)'s jurisdictional bar did not apply.

The district court rejected the FDIC's jurisdictional challenge and converted the TRO into a preliminary injunction against the FDIC in a final order on September 8, 2009, determining that "assets possessed by, but not belonging to, the failed bank are outside the receivership estate, and the FDIC's attempts to dispose of these assets is therefore not protected by the jurisdiction-stripping provisions of FIRREA." The district court reasoned that the FDIC's attempt to control such assets constituted an act beyond its receivership powers, and FIRREA's jurisdictional prohibitions do not "extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as receiver."

The FDIC filed timely notice of an appeal of the district court's preliminary injunction order on September 9, 2009. On September 15, 2009, the FDIC moved for a stay of this lawsuit pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii) and (B), arguing that once the FDIC as receiver requests a stay of a judicial action, the plaintiff may only proceed with the action after exhausting the administrative remedies described in FIRREA. On October 19, 2009, the district court granted the

stay due to the mandatory nature of FIRREA's stay provision but left the preliminary injunction against the FDIC intact. Bank of America delivered an administrative claim to the FDIC on November 19, 2009. This appeal and the FDIC's petition for a writ of mandamus ensued.[1]

## II. DISCUSSION

Although we review the district court's entry of a preliminary injunction under a deferential abuse-of-discretion standard, the legal conclusions upon which an injunction is based are subject to more exacting de novo review. Fla. State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1166 (11th Cir. 2008).

Section 1821(j) of FIRREA provides in relevant part:

> no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver.

12 U.S.C. § 1821(j). This provision has been interpreted broadly to bar judicial intervention whenever the FDIC is acting in its capacity as a receiver or conservator, even if it violates its own procedures or behaves unlawfully in doing so. Bursik v. One Fourth St. N., Ltd., 84 F.3d 1395, 1397 (11th Cir. 1996); Nat'l Trust for Historic Pres. v. FDIC, 995 F.2d 238, 240 (D.C. Cir. 1993), vacated, 5

---

[1] Due to our disposition of this expedited appeal in the FDIC's favor, we need not entertain the FDIC's petition for the extraordinary remedy of a writ of mandamus seeking the same relief. Accordingly, the FDIC's petition for a writ of mandamus is denied as moot.

F.3d 567 (D.C. Cir. 1993), reinstated in relevant part, 21 F.3d 469 (D.C. Cir. 1994). See also RPM Invs., Inc. v. Resolution Trust Corp., 75 F.3d 618, 620 n.2 (11th Cir. 1996) ("The 'exceptions' to § 1821(j)'s jurisdictional bar are extremely limited."). Therefore, our jurisdictional inquiry under §1821(j) is quite narrow. First, we evaluate whether the FDIC's challenged actions constitute the exercise of a receivership power or function. See RPM Invs., Inc., 75 F.3d at 620. If so, the FDIC is protected from all court action that would "restrain or affect" the exercise of those powers or functions pursuant to § 1821(j), and we proceed to the secondary inquiry of whether the district court's actions do in fact restrain or affect the FDIC as receiver. Id.

The district court found and Bank of America argues that the FDIC would exceed its statutory powers and functions as receiver by controlling and disposing of the loans and loan proceeds at issue. We disagree. Such actions fall squarely within the powers and functions granted to the FDIC by Congress in FIRREA. For example, § 1821(d)(2)(G) grants the receiver the power to "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer." Section 1821(d)(2)(H) grants the receiver the broad power to "pay all valid obligations" of the failed financial institution. And § 1821(d)(3) grants

the receiver the power to determine all claims against the institution in accordance with the comprehensive administrative claims procedures set forth in § 1821(d)(3)–(13). Further, under § 1821(d)(2)(J)(i), the FDIC also enjoys "such incidental powers" as shall be necessary to carry out those powers expressly granted by statute.

By marshaling the items found on hand at Colonial at the time of its failure, including custodial items held in trust, beginning the process of identifying their proper nature and ownership, and ultimately disposing of these items to parties with valid claims, the FDIC would engage in at least one if not all of these statutory receivership functions. Not only do these functions fall squarely within the FDIC's statutory powers contained in FIRREA, common sense and common experience make plain that such functions are routinely undertaken by receivers. Indeed, there is no other party, except the FDIC as receiver, that could perform such functions. And Congress expressly mandated that no court—at the behest of other parties—may take any action to restrain or affect the exercise of the FDIC's powers or functions as receiver. 12 U.S.C. § 1821(j).

Moreover, as previously noted, "the availability of injunctive relief does not hinge on our view of the proper exercise of otherwise-legitimate powers." Gross v. Bell Sav. Bank PA SA, 974 F.2d 403, 408 (3d Cir. 1992). See also Bursik, 84 F.3d

at 1397. Thus, Bank of America's fear that the FDIC will make an erroneous determination of ownership is immaterial to our analysis because it is merely a fear of the FDIC's improper performance of its legitimate receivership functions. Congress contemplated the reality that the FDIC may err in its determination of receivership claims and provided all claimants with the remedy of de novo review in federal court of the FDIC's claims determination. 12 U.S.C. § 1821(d)(6) (providing for the option of filing suit after the FDIC's initial determination to allow or disallow a claim in one of two specified federal courts); id. § 1821(d)(7)(A) (providing for judicial review of the FDIC's final administrative determination).

There can also be no question that the district court would "restrain or affect" the exercise of these powers or functions by enjoining the FDIC from "selling, pledging, assigning, liquidating, encumbering, transferring, or otherwise disposing of all or any portion of the loans and loan proceeds related to the Ocala loans." Under this broad injunction, the FDIC is left solely to possess the loans, unable to exercise the congressional mandate that it "shall pay all valid obligations" of the failed bank, 12 U.S.C. § 1821(d)(2)(H), or process any administrative claims relating to the loans. In essence, injunctive relief, like that issued here, violates the heart of what is commonly termed FIRREA's "anti-injunction provision." See,

10

e.g., Hindes v. FDIC, 137 F.3d 148, 160 (3d Cir. 1998); Sharpe v. FDIC, 126 F.3d 1147, 1154 (9th Cir. 1997); Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n, 94 F.3d 914, 923 (4th Cir. 1996).  See also, e.g., Nat'l Trust for Historic Pres., 995 F.2d at 239 (concluding that an injunction against a planned sale of an historic property of the failed bank would "surely 'restrain or affect' the FDIC's exercise of those powers or functions"); Gross, 974 F.2d at 408 (concluding that an injunction requiring the receiver to release certain deposits would "restrain or affect" the receiver's exercise of its powers and functions); Tillman v. Resolution Trust Corp., 37 F.3d 1032, 1036 (4th Cir. 1994) (concluding that an injunction restraining a foreclosure sale violated FIRREA's anti-injunction provision).

Nor is our analysis affected by Bank of America's argument that the disputed items were custodial assets, unowned by Colonial, much like the contents of a safe deposit box.  Even assuming arguendo that the nature of the assets at issue is purely custodial and that title to the loans and their proceeds never transferred to Colonial, § 1821(j) would still clearly bar judicial restraint of the FDIC as long as it acts in its receivership capacity.  In interpreting a statutory provision, "we must presume that Congress said what it meant and meant what it said." United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).  "Additionally, we must assume that the ordinary meaning of a statute's language accurately expresses [its]

11

legislative purpose." Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1332 (11th Cir. 2009) (quotation marks and citation omitted). Applying these presumptions, the plain language of § 1821(j) clearly and unambiguously reflects congressional intent to bar courts from granting the precise type of injunctive relief sought here so long as the receiver is not acting in some capacity other than receiver or conservator or attempting to exercise powers and functions beyond those granted by FIRREA. Thus, we decline to carve out an "non-owned assets" exception to § 1821(j) that stands in direct contradiction to the statute's plain meaning. No language in § 1821(j) so limits the breadth of its jurisdictional bar or the "powers and functions" of the FDIC. To the contrary, at least one subsection expressly includes non-owned custodial assets associated with trust business among the FDIC's powers and functions as receiver. See § 1821(d)(2)(G) ("including assets and liabilities associated with any trust business").[2]

---

[2]    We need not, and do not, address the appropriate resolution of the extreme hypotheticals suggested by Bank of America (e.g., the refusal of the FDIC to return clearly stolen property to the true owner, or property conceded by the FDIC to be owned by a claimant with respect to which the FDIC concededly has no interest, claim, or function). Although Bank of America baldly asserts that the FDIC made such concessions in the district court, we have carefully parsed the record and found no such concession. Rather, the FDIC's clear position in the district court was that § 1821(j) barred the district court from entering the preliminary injunction and that the FDIC's proper receivership function was to initially determine the proper ownership and disposition of the loans and loan proceeds subject to Bank of America's statutory right to pursue the issue in the administrative claims process and thereafter in de novo judicial proceedings. Accordingly, we express no opinion on whether the FDIC would be exercising a receivership function if it refused to turn over property to a conceded true owner with respect to which the FDIC concededly had no interest, claim, or function.

12

Furthermore, no circuit court case has ever limited the application of § 1821(j) to assets "owned" by a failed financial institution. The only two district court opinions addressing § 1821(j) that arguably support Bank of America's position have only recognized such a limitation implicitly. See Cummings Props. Mgmt., Inc. v. FDIC, 786 F. Supp. 144, 145–46 (D. Mass. 1992) (holding that the threshold issue of whether an ATM situated on property leased to a failed bank is a fixture, and thus whether it may be removed by the FDIC as part of liquidation, was appropriate for judicial review), vacated as moot due to settlement, No. 92-1504, 1992 WL 366909 (1st Cir. Sept. 1, 1992); Steamboat Ventures v. FDIC, No. 1:09-cv-01399, 2009 WL 4797832, at *3 (N.D. Ga. Dec. 8, 2009) (holding that § 1821(j) does not deprive a court of jurisdiction to enjoin the FDIC from initiating foreclosure proceedings where the failed bank's security interest in the property proposed for sale had been extinguished prior to the FDIC's takeover). However, neither of these two cases involved cash or loan documents contained in the failed bank's accounts, whether general or custodial, upon the bank's failure. In addition, neither case examined whether the injunction sought would restrain the FDIC's exercise of a proper receivership power or function. To the extent that these two lower court cases support the broad "non-owned assets" exception advanced by Bank of America, we do not find them persuasive.

13

We also decline to consider the parties' arguments with respect to §
1821(d)(13)(D), which is a distinct jurisdiction-stripping provision contained
within FIRREA's administrative claims procedures.[3]  Section 1821(j) provides
ample support for the FDIC's jurisdictional defense, and there is no need for the
FDIC to rely in addition on § 1821(d)(13)(D).  Moreover, we need not attempt to
harmonize § 1821(j) and § 1821(d)(13)(D) because our circuit, among others, has
recognized that § 1821(j)'s breadth is in no way dependent on or limited by §
1821(d)(13)(D).  See RPM Invs., Inc., 75 F.3d at 621–22.  Accordingly, we hold
that § 1821(j) deprived the district court of jurisdiction to issue the preliminary
injunction against the FDIC, and we have no need to address § 1821(d)(13)(D).

The operation of § 1821(j) does not leave Bank of America without a
remedy.  Its claim is one that can and should be pursued through the administrative
claims process.  See 12 U.S.C. § 1821(d)(3)–(13).  The FDIC has consistently
maintained in its pleadings before the district court and submissions to this court
that it will adjudicate Bank of America's claim administratively.  The FDIC's
position is consistent with the case law, which illustrates that claims similar to

---

[3]      Section 1821(d)(13)(D) states: "[N]o court shall have jurisdiction over . . . (i) any
claim or action for payment from, or any action seeking a determination of rights with respect to,
the assets of any depository institution for which the Corporation has been appointed receiver . . .
or (ii) any claim relating to any act or omission of such institution or the Corporation as
receiver."

14

Bank of America's have been subject to FIRREA's administrative claims process. See Merrill Lynch Mortgage Capital, Inc. v. FDIC, 293 F. Supp. 2d 98, 101–03 (D.D.C. 2003) (reviewing de novo the FDIC's administrative claims determination with respect to large pools of residential mortgages held in custodial counts and serviced by a failed bank). Bank of America's only argument that the administrative claims process is inapplicable to its claim is a conclusory assertion that the loans and their proceeds are contained in special accounts and that special accounts are not subject to the administrative claims process. Assuming arguendo that Bank of America's claim relates to a special account, Bank of America has cited no authority in support of its position, and our independent research has uncovered none. To the contrary, the only authority of which we are aware— Merrill Lynch—indicates that similar claims are indeed subject to the administrative claims process. See id. at 101–02.

Additionally, our sister circuits have held that all manner of claims are appropriate for resolution through the administrative claims process. See, e.g., McCarthy v. FDIC, 348 F.3d 1075, 1081 (9th Cir. 2003) (claims by debtors of a failed bank arising out of acts of the receiver, as opposed to the failed bank, are subject to FIRREA's administrative claims process); Freeman v. FDIC, 56 F.3d 1394, 1402 (D.C. Cir. 1995) (claims by debtors of a failed bank alleging the

15

fraudulent restructuring of their home mortgage loan are subject to the administrative claims process); Bueford v. Resolution Trust Corp., 991 F.2d 481, 484 (8th Cir. 1993) (employment discrimination claims by former employees of the failed bank are subject to the administrative claims process); Henderson v. Bank of New England, 986 F.2d 319, 321 (9th Cir. 1993) (claims by a denied credit card applicant seeking damages and the right to discover derogatory credit card information are subject to the administrative claims process); Meliezer v. Resolution Trust Co., 952 F.2d 879, 883 (5th Cir. 1992) (negligence claim by home mortgage owners against a failed bank for issuing a loan accompanied by insufficient fire and hazard insurance is subject to the administrative claims process); Resolution Trust Corp. v. Elman, 949 F.2d 624, 628 (2d Cir. 1991) (claim by attorney of failed bank for the return of the bank's files until bank's satisfaction of the attorney's retaining lien is subject to the administrative claims process). The instant claims are not remotely similar to the few claims which courts have found not to be subject to FIRREA's administrative claims process. See, e.g., Homeland Stores, Inc. v. Resolution Trust Corp., 17 F.3d 1269, 1273–75 (10th Cir. 1994) (claims against the receiver, as opposed to the failed bank, for actions in connection with its management of a shopping center, which was an asset of the failed institution, are not subject to the administrative claims process); Nat'l Trust

16

for Historic Pres., 995 F.2d at 242 (claim by the National Trust for Historic Preservation alleging violations of the National Historic Preservation Act was not subject to the administrative claims process); Rosa v. Resolution Trust Corp., 938 F.2d 383, 394–95 (3d Cir. 1991) (claim by pension plan participants seeking an order barring the retroactive termination of the plan cannot be determined, allowed, disallowed, or paid and therefore is not susceptible to resolution in the administrative claims process).  Accordingly, if Bank of America's claim to the disputed items is as clear as its assertions indicate, it is probable that its claim will be honored in the administrative claims process; if not, Bank of America has its statutory right to de novo review in federal district court.  12 U.S.C. § 1821(d)(6), (d)(7)(A).  See also Merrill Lynch Mortgage Capital, Inc., 293 F. Supp. 2d at 101–03.  Bank of America has not argued at any stage of this litigation that the administrative claims process is somehow inadequate to adjudicate its claim of ownership of the loans and loan proceeds, only that the process is inapplicable to its claim.[4]  Therefore, any such claim is deemed abandoned.

---

[4]    We note that although Bank of America never argued that the administrative claims process was legally inadequate, it did express concern at oral argument that it may not receive one hundred cents on the dollar for its claim.  However, as indicated in Merrill Lynch, 293 F. Supp. 2d at 110, Bank of America can claim priority.  It can also seek expedited review.
        FIRREA provides for expedited review of claims asserting perfected security interests in the assets of the failed institution, where the claimant alleges irreparable injury should the routine claims process be followed.  See 12 U.S.C. § 1821(d)(8)(A).  "Yet this provision only further emphasizes that the statutory recourse of all creditors . . . is with the [FDIC] in the first instance."

Accordingly, we hold that the administrative claims process is the appropriate mechanism to evaluate Bank of America's claim. Bank of America must exhaust FIRREA's administrative claims process before turning to the federal courts for de novo judicial review.

## III. CONCLUSION

In conclusion, we VACATE the district court's preliminary injunction order against the FDIC and REMAND with instructions to DISMISS Bank of America's motion for injunctive relief for lack of jurisdiction.

VACATED and REMANDED; DISMISSED for lack of jurisdiction.

---

Elman, 949 F.2d at 628. Indeed, the fact that FIRREA specifically contemplates the adjudication of such claims, which are similar to Bank of America's claim here, is further evidence that Congress intended their resolution through the administrative process.

We also note that FIRREA corrected some of the deficiencies in the administrative claims processes found in prior similar statutes. Appropriate time limitations on a receiver's consideration of whether to pay or disallow administrative claims—now a part of FIRREA—were markedly absent from the Home Owners' Loan Act, which was under Supreme Court scrutiny in Coit Independence Joint Venture v. Federal Savings & Loan Insurance Corp., 489 U.S. 561, 109 S. Ct. 1361 (1989). For this reason, the Supreme Court held that the Home Owners' Loan Act's administrative scheme was inadequate because it gave the Federal Savings and Loan Insurance Corporation ("FSLIC") unfettered authority to bury large claims in the administrative process indefinitely. Coit, 489 U.S. at 586, 109 S. Ct. at 1375. Therefore, exhaustion of administrative remedies was not required before creditors sought de novo consideration of their claims in court. Id. at 587, 109 S. Ct. at 1375–76. FIRREA, however, limits the FDIC's consideration of claims to a 180-day period, which may only be extended by a written agreement between the claimant and the FDIC. 12 U.S.C. § 1821(d)(5)(A)(i), (ii).