**FDIC, as receiver of Integrity Bank of Alpharetta, Georgia, Plaintiff,**

v.

**Steven M. SKOW, Alan K. Arnold, Douglas G. Ballard, Clinton M. Day, Joseph J. Ernest, Donald C. Hartsfield, Jack S. Murphy, and Geraldo O. Reynolds, Defendants.**

**Civil Action No. 1:11–CV–0111–SCJ.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 14, 2012.

Christopher D. Kiesel, Dustin R. Bagwell, Kyle M. Keegan, Keegan, Denicola, Kiesel, Bagwell, Juban & Lowe, LLC, Baton Rouge, LA, Jeanne Simkins Hollis, Simkins Hollis Law Group, P.C., Atlanta, GA, for Plaintiff.

Paul Anthony Piland, Richard Randolph Edwards, III, Cochran & Edwards, LLC, Smyrna, GA, James E. Connelly, Jennifer Saffold Collins, John Gregory Perry, Robert Riles Ambler, Jr., Womble Carlyle Sandridge & Rice, LLP, Aaron M. Danzig, Edward Alexander Marshall, Arnall Golden & Gregory, Stanley Harold Pollock, Haskell, Slaughter, Young & Rediker, LLC, David Lewis Balser, Ellen Claire Carothers, Tracy Klingler, King & Spalding, LLP, James Barton Manley, Jr., Jeffrey Ronald Baxter, McKenna Long & Aldridge, LLP, Atlanta, GA, Frank M. Young, III, T. Dylan Reeves, Kirk D. Smith, Haskell Slaughter Young & Rediker, Birmingham, AL, for Defendants.

## *ORDER*

STEVE C. JONES, District Judge.

This matter is before the Court on the Plaintiff's Motion for Reconsideration and Partial Summary Judgment, or in the Alternative to Certify the Order for Interlocutory Appeal under 28 U.S.C. § 1292(b) [Doc. No. 92].

### I. Motion for Reconsideration

The Plaintiff has moved for the Court to reconsider Section I.B.2 of its February 27, 2012 order [Doc. No. 84, pp. 14–19, 2012 WL 8503168] on the Defendants' Motion to Dismiss/Motion for Judgment on the Pleadings [1] based upon the application

---

1. After the filing of the Complaint, Defendants Skow, Arnold, Ballard, and Day filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. Nos. 28, 30, 32, and 36. Defendants Ernest, Hartsfield, Murphy, and Reynolds served an answer, asserting the business judgment rule as their sixth defense and also filed motions for judgment

of Georgia's business judgment rule to allegations of ordinary negligence and breach of fiduciary duty (based upon ordinary negligence).

 Under Local Rule 7.2, motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." L.R. 7.2(E), NDGa. Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Boone v. Corestaff Support Servs., Inc.*, 805 F.Supp.2d 1362, 1368 (N.D.Ga.2011). However, a motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." *Id.* Further, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon v. Nat'l Healthcare Corp.*, 103 F.Supp.2d 1322, 1338 (N.D.Ga.2000).

Plaintiff moves for reconsideration on three alleged errors, as follows:

(1) by holding that an ordinary negligence count can never survive the business judgment rule ("BJR") and eliminating any inquiry into whether the allegations in the Complaint rebut the presumption of good faith, the Court created an irrebuttable presumption of good faith for ordinary negligence in cases that is contrary to the plain language of the case of *Brock Built, LLC v. Blake*, 300 Ga.App. 816, 686 S.E.2d 425 (2009);

(2) the Court applied an incorrect standard of care;

(3) the Court erred in holding that a court-created business judgment presumption can repeal the statutory standard of care and transform it from ordinary negligence into gross negligence. [Doc. No. 92–1, p. 10].

### A. Alleged error #1: application of the business judgment rule and its rebuttable presumption

In the February 27, 2012 ruling, the Court held that the Defendants' citations of authority (specifically *Flexible Products Co. v. Ervast*, 284 Ga.App. 178, 643 S.E.2d 560 (2007) and *Brock Built, LLC v. Blake*, 300 Ga.App. 816, 686 S.E.2d 425 (2009)[2]) regarding the application of Georgia's business judgment rule to claims for ordinary negligence (based on acts and omissions in the discharge of Defendants' responsibilities as bank directors and officers)[3] were determinative and granted the Defendants' motion to dismiss to this regard.

As set out in the Court's February ruling:

In *Flexible Products Co. v. Ervast*, the Georgia Court of Appeals stated:

Georgia's business judgment rule relieves officers and directors from liability for acts or omissions taken in good faith compliance with their corporate duties. **Such rule forecloses liability in officers and directors for ordinary**

on the pleadings. Doc. No. 29, p. 6 and Doc. No. 33.

**2.** Appeal after remand found at 316 Ga.App. 710, 730 S.E.2d 180 (2012).

**3.** The Court notes that neither party has argued that the alleged acts and omissions at issue here would not constitute business judgments. The issue for the Court's consideration involves the application of the business judgment rule.

**negligence in discharging their duties.** "[O]rdinary diligence or negligence is what an ordinarily prudent man would do under the same circumstances...." **Given that officers and directors thus are protected from liability for ordinary negligence,** the trial court erred in refusing to direct a verdict for [defendant] on [plaintiff's] ordinary negligence claim.

284 Ga.App. at 182, 643 S.E.2d at 564–65 (emphasis added).

In *Brock Built, LLC v. Blake,* the Georgia Court of Appeals explained the business judgment rule as follows:

Georgia law requires that corporate officers and directors discharge their duties in good faith and with the care of an ordinarily prudent person in a like position. In determining whether a corporate officer has fulfilled his or her statutory duty, Georgia courts apply the business judgment rule. The business judgment rule affords an officer the presumption that he or she acted in good faith, and absolves the officer of personal liability unless it is established that he or she engaged in fraud, bad faith or an abuse of discretion: [4]

The business judgment rule protects ... officers from liability when they make good faith business decisions in an informed and deliberate manner. The presumption is that they have acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests

of the company. Unless this presumption is rebutted, they cannot be held personally liable for managerial decisions. However, officers may be held liable where they engage in fraud, bad faith, or an abuse of discretion.[5]

**Allegations amounting to mere negligence, carelessness, or "lackadaisical performance" are insufficient as a matter of law.**

300 Ga.App. at 821–22, 686 S.E.2d at 430–31 (citations omitted, emphasis added).[6]

The *Brock Built* court further stated: "[T]he business judgment rule is a policy of judicial restraint born of the recognition that [officers] are, in most cases, more qualified to make business decisions than are judges." *Id.* at 823 and 686 S.E.2d at 431 (quoting *In re The Bal Harbour Club,* 316 F.3d 1192, 1194–95(II) (11th Cir.2003)).

As stated above, Plaintiff moves for reconsideration on the ground that by holding that an ordinary negligence count can never survive the BJR and eliminating any inquiry into whether the allegations in the Complaint rebut the presumption of good faith, the Court created an irrebuttable presumption of good faith for ordinary negligence in cases that is contrary to the plain language of the case of the *Brock Built* case.

The crux of the present motion for reconsideration involves the proper interpretation of the *Flexible Products* and *Brock Built* cases.

---

**4.** The Court notes that it could be said that there are two statements of the business judgment rule in the *Brock Built* case. This note marks the end of the first statement. The next note, *infra,* will mark the end of the next statement.

**5.** This note marks the end of the second statement of the business judgment rule.

**6.** The Court notes that *Flexible Products* case dealt with a company and *Brock Built* case dealt with a limited liability corporation. Both cases cited to the corporate code, O.C.G.A. § 14-2-830 and § 14-2-842. The Court notes that while the banking code is at issue here—said provisions are essentially identical to the cited provisions in the *Flexible Products* and *Brock Built* cases.

Before going any further, the Court must first consider the question raised by Plaintiff in its brief as to whether this Court is bound by two intermediate appellate decisions of the Georgia Court of Appeals. Doc. No. 92–1, p. 18. Plaintiff cites the case of *C.I.R. v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) for the proposition that a decision of an intermediate appellate court is not controlling where the highest court of the State has not spoken on the point.

The Court notes that the Plaintiff's citation of the *Bosch's Estate* case is incomplete, as after the stated proposition, the United States Supreme Court went on to state: "'an intermediate appellate state court ... is a datum for ascertaining state law **which is not to be disregarded by a federal court** unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" 387 U.S. at 465, 87 S.Ct. at 1782 (emphasis added).

As correctly stated by Defendants, *Bosch's Estate* does not direct federal courts to ignore state court decisions. Doc. No. 110, p. 23. In addition, there is a subsequent United States Supreme Court case, *Gooding v. Wilson,* 405 U.S. 518, 526 n. 3, 92 S.Ct. 1103, 1108 n. 3, 31 L.Ed.2d 408 (1972) in which the Supreme Court recognized that it had been informed that "the Court of Appeals of Georgia is a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the Supreme Court of Georgia." *Id.* The Supreme Court went on to hold that "[f]ederal courts therefore follow these holdings as to Georgia law." *Id.*

There is also Eleventh Circuit authority which holds that:

[a] federal court applying state law **is bound** to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise. **A federal court is bound by this rule whether or not the court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates.**

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir. 1983) (emphasis added); *see also State Farm Mut. Auto. Ins. Co. v. Duckworth,* 648 F.3d 1216, 1224 (11th Cir.2011) (recognizing that the process is not exact and reviewing relevant precedent to guide analysis) and *Versiglio v. Bd. of Dental Exam'rs of Ala.,* 651 F.3d 1272 (11th Cir. 2011), *vacated and superseded on rehearing* by *Versiglio v. Bd. of Dental Exam'rs of Ala.,* 686 F.3d 1290 (11th Cir.2012) (recognizing the practice of giving ordinary deference to state courts when they interpret matters of state concern and declining to interpret state law in a way that was diametrically opposed to the findings of the state appeals court).

In light of the above-stated authority, the Court finds that it is bound to adhere to the business judgment rule holdings set out in the *Flexible Products* and *Brock Built* cases, absent some indication that the Georgia Supreme Court would decide the issue otherwise.

Plaintiff argues that there is persuasive data which indicates that the Georgia Supreme Court would decide contrary to the Georgia Court of Appeals based upon the plain language of O.C.G.A. § 7–1–490. Plaintiff also references the Eleventh Circuit's opinion in *FDIC v. Stahl,* 89 F.3d 1510 (11th Cir.1996) concerning an interpretation of a similar Florida statute. For the foregoing reasons and the specific reasoning found in section I(C) of this order,

*infra,* the Court is unable to uphold the Plaintiff's arguments to this regard.

■ The Court further notes that it appears that while there is no Georgia case directly stating that the business judgment rule is applied in the banking context, there is a general principle "fixed in [Georgia] jurisprudence that 'the courts will not interfere in matters involving merely the judgment of a majority in exercising control over corporate affairs.'" *Millsap v. Am. Family Corp.,* 208 Ga.App. 230, 233, 430 S.E.2d 385, 388 (1993). The Georgia Supreme Court has also specifically held in the banking litigation context in which negligence and misconduct allegations were made that "[t]he mere exercise by directors of poor judgment in making loans is not sufficient to form a basis of liability; for the directors merely assume the obligations to manage the affairs of the institution with diligence and good faith." *Mobley v. Russell,* 174 Ga. 843, 847, 164 S.E. 190, 193 (1932). While not a specific declaration of the business judgment rule, the *Mobley* case (together with the above-stated fixed jurisprudence of Georgia), lead the Court to conclude that the business judgment rule is applied in Georgia in the banking context.

Having settled the issues regarding the applicability of the business judgment rule, the Court returns to the crux of the present motion for reconsideration—specifically, the proper interpretation of the *Flexible Products* and *Brock Built* cases and the application of the business judgment rule in the case sub judice.

Plaintiff asks the Court to apply a contextual reading of the *Flexible Products* and *Brock Built* cases. Plaintiff states that there is a due care and good faith prerequisite to application of the business judgment rule and that the allegations of the Complaint support a reasonable infer-

ence that neither due care or good faith prerequisites have been met. Doc. No. 92–1, p. 16. Plaintiff states that *Brock Built* provides that "defendants cannot avoid liability if, as here, the presumption of good faith has been rebutted...." Doc. No. 119, p. 6. Plaintiff argues that *Flexible Products* and *Brock Built* should be read to mean that "the BJR protects Defendants when plaintiffs establish only negligent conduct but no bad faith or abuse of discretion." Doc. No. 119, p. 10.

In response, Defendants state that the case law cited by Plaintiff "provides no basis for a conclusion that the application of the business judgment rule is contingent upon a preliminary or 'prerequisite' finding of due care." Doc. No. 110, p. 21. Defendants state: "a rebuttal of the business judgment rule's presumption does not mean a plaintiff can pursue claims based in ordinary negligence...." Doc. No. 110, p. 13. Defendants state that Plaintiff has taken the analysis of *Brock Built* "out of context" in that said analysis was "limited to whether the plaintiff's allegations of mere negligence were sufficient to overcome the protection of the business judgment rule and to establish a breach of fiduciary duty." Doc. No. 110, p. 16.

■ The Court has spent significant time reviewing the *Flexible Products* and *Brock Built* cases. After review, the Court finds that the most logical conclusion as to how the business judgment rule applies in Georgia is as stated by Defendants in their initial reply brief: "[g]iven the standard of care set forth in these statutes, a cause of action for ordinary negligence against an officer or director exists, but only theoretically. When Georgia's business judgment rule is applied to claims for ordinary negligence, Georgia courts hold that such claims are not via-

ble." Doc. No. 62, p. 8.[7]

This is illustrated by the language of both the *Flexible Products* and *Brock Built* cases, as well as the specific statement in *Brock Built* that "[a]llegations amounting to mere negligence, carelessness, or 'lackadaisical performance' are insufficient as a matter of law." 300 Ga. App. at 822, 686 S.E.2d at 430–31. The Court recognizes that Plaintiff argues that the word "insufficient" refers "to the fact that such allegations were insufficient because they were not coupled with a showing of bad faith, not because there was some categorical rule against ordinary negligence...." Doc. No. 119, p. 10. However, in neither of the two cases at issue did the Georgia Court of Appeals make such a statement.

Plaintiff further argues that in holding that an ordinary negligence count can never survive the BJR and in eliminating any inquiry into whether the allegations in the Complaint rebut the presumption of good faith, the Court created an irrebuttable presumption of good faith for ordinary negligence that is contrary to the plain language of the case of the *Brock Built* case, 300 Ga.App. at 816, 686 S.E.2d 425. In reading and considering the *Brock Built* and *Flexible Products* cases, the Court is unable to agree that the presumption is irrebuttable. It appears that based on Georgia law, once the presumption is rebutted, then liability arises in claims based upon fraud, bad faith, or abuse of discretion—not in ordinary negligence. *See, e.g., State v. Brawner,* 297 Ga.App. 817, 820, 678 S.E.2d 503, 506 (2009) ("Georgia courts have required more than negligent or careless conduct to support a finding of bad faith.") and *Hendon v. De-*

*Kalb Cnty.,* 203 Ga.App. 750, 758, 417 S.E.2d 705, 712 (1992) ("'Bad faith' is not simply bad judgment or negligence ....").

In regard to Plaintiff's arguments concerning the analysis found in *Brock Built* (specifically that there was a detailed appellate court analysis of whether the facts rebutted a presumption of good faith, Doc. No. 92–1, p. 12), the Court has interpreted the *Brock Built* analysis somewhat differently. The Court notes that in considering the application of the business judgment rule as to a breach of fiduciary duty claim, the Georgia Court of Appeals began by identifying two general categories of conduct: (1) improper motive and (2) neglect. The Court of Appeals thereafter set out the business judgment rule and in its first sentence after setting out the rule, stated: "[claimant] has not alleged conduct that rises to the level of fraud, bad faith or an abuse of discretion sufficient to establish a claim for breach of fiduciary duty." 300 Ga.App. at 822, 686 S.E.2d 425. This sentence leads this Court to believe that the Court of Appeals concluded that claims for breach of fiduciary duty post-application of the business judgment rule are based upon fraud, bad faith, or an abuse of discretion. The Court of Appeals thereafter performed an "[e]ven if" analysis as to whether improper motive could be a breach of fiduciary duty. *Id.* The Court of Appeals next considered the neglect category and stated: the conduct at issue "at best" amounted to a "showing of negligent or careless performance of ... duties, which is insufficient to show breach of fiduciary duty as a matter of law." *Id.* at 823, 686 S.E.2d 425. The Court of Appeals concluded by stating that the "allegations in the complaint in conjunction with the rec-

---

**7.** Plaintiff also argues that such a reading of these two cases (combined with Defendants' arguments) essentially creates a gross negligence requirement that places these cases in

direct conflict with the statutory standard. Doc. No. 119, p. 6. The Court will address this argument in the statutory standard section of this order, *infra.*

ord evidence are simply not sufficient to rebut the presumption that [the former employee] made good faith business decisions in an informed and deliberate manner or to present a jury question as to whether he engaged in fraud, bad faith, or an abuse of discretion." *Id.*

Plaintiff further argues that there is no support in a conclusion that only gross negligence claims can survive the BJR in that the words "gross negligence" never appear in *Brock Built* or *Flexible Products.* Doc. No. 119, p. 9. Plaintiff states that "it is difficult to believe that *Brock Built* and *Flexible Products* wanted to announce a rule that only gross negligence cases can survive the BJR without ever saying so." Doc. No. 119, p. 10. The Court notes that it has not specifically held that the only claim that can survive the business judgment rule is gross negligence, as the *Brock Built* case stated that: "officers may be held liable where they engage in fraud, bad faith, or an abuse of discretion." 300 Ga.App. at 822, 686 S.E.2d at 430.

An additional argument that Plaintiff advances is that the BJR is peculiarly a question of fact, wholly inappropriate for consideration at the motion to dismiss stage. Plaintiff also argues that a vast majority of courts do not decide BJR issues at the motion to dismiss stage. The Court notes that the case *sub judice* is at both the motion to dismiss stage (as to some defendants) and motion for judgment on the pleadings stage (as to the remaining

defendants). While the Court recognized in the context of its original order that the application of the BJR at this early stage in the litigation is debatable, the Court also could not ignore the language of *Flexible Products* and *Brock* which renders the decision more of law, than of fact—so that a ruling at this time would not be inappropriate.[8] The Court further finds that even if the ruling had been deferred to the summary judgment stage, in light of the holdings of *Flexible Products* and *Brock,* it does not appear that additional facts, gathered through discovery, would affect the ruling.

**B. Alleged error # 2: application of the standard of care**

Plaintiff argues that the Court omitted the ordinary diligence portion of O.C.G.A. § 7-1-490 from its ruling when it stated: "O.C.G.A. § 7-1-490 provides in relevant part that '[a] director or officer who so performs his duties [essentially in good faith] shall have no liability by reason of being or having been a director or officer of the bank or trust company.'" Doc. No. 84, p. 16. Plaintiff argues that omitting the statutory "due care" requirement was reversible error; however, the Court notes that said referenced sentence is not to the standard of care in Georgia, but is to the statutory "no liability" standard. The Court correctly set forth the statutory standard of care on pages 14-15 of its order when it stated: "Georgia law provides in relevant part that "Directors and

---

**8.** *See Heard v. Perkins,* 441 B.R. 701, 711 (Bankr.N.D.Ala.2010) (holding that *"Twombly* and *Iqbal* appear to expand the right to have business judgment considered pursuant to a motion to dismiss.'').

It is also important to note that the business judgment rule could be considered a presumption, rather than an affirmative defense. *See, e.g., In re Bal Harbour Club, Inc.,* 316 F.3d 1192, 1195 (11th Cir.2003) ("In using

the word 'presumption' or 'presumed' in articulating the business judgment rule, the courts have not intended to create a presumption in the classical procedural sense-as a vehicle that puts the burden of going forward with the evidence on the party without the burden of proof. Rather, the courts are merely expressing the substantive rule of director liability.'').

officers of a bank or trust company shall discharge the duties of their respective positions in good faith **and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances** in like positions." " *Id.* at pp. 14–15. The Court further stated: "The Court interprets this statutory language as an ordinary negligence standard of care." *Id.* at p. 15. The Court was clearly aware of the applicable standard of care when it set forth the standard on pages 14–15 of the order. Accordingly, there is no error as to the statutory standard of care to this regard.

In regard to the "no liability" statutory standard set forth above, in the interest of caution, the Court hereby vacates said sentence in its February 27, 2012 order [at Doc. No. 84, p. 16] and inserts the following sentence in its place:

> O.C.G.A. § 7–1–490 provides in relevant part that "[a] director or officer who so performs his duties [essentially in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions] shall have no liability by reason of being or having been a director or officer of the bank or trust company."

In conclusion, the Court specifically notes that it was fully aware of the standard of care, as illustrated above, as well as the statutory standard of "no liability" in making its initial decision.

Plaintiff's motion for reconsideration on this ground is hereby **DENIED.**

## C. Alleged error # 3: statutory standard of care

Plaintiff argues that reconsideration is warranted because a court-created presumption of good faith cannot repeal the statutory ordinary negligence standard and transform it into gross negligence. Doc. No. 92–1, p. 17.

Georgia's applicable banking statute, O.C.G.A. § 7–1–490(a), states in relevant part: "Directors and officers of a bank or trust company shall discharge the duties of their respective positions in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions." (emphasis added). Said code section further provides that: "[a] director or officer who so performs his duties [essentially in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions] shall have no liability by reason of being or having been a director or officer of the bank or trust company." *Id.*

Plaintiff argues that "any interpretation of the BJR that would allow defendants to avoid liability if they acted in good faith but without due care would violate [O.C.G.A. § 7–1–490], which states that defendants 'shall have no liability' only if they act both in good faith and with due care.' " Doc. No. 119, p. 7 (emphasis omitted). Plaintiff also argues that *"Brock Built* and *Flexible Products* must be read to be consistent with the ordinary negligence standard established by the Georgia Legislature, or else be disregarded." Doc. No. 119, p. 13. Plaintiff argues that "[i]f only gross negligence can survive the BJR, then the standard of care is essentially gross negligence, which violates O.C.G.A. § 7–1–490's prescription that the standard of care is ordinary negligence." Doc. No. 119, p. 14. Plaintiff states that "[o]nly the Georgia legislature may raise the standard of care for directors and officers to gross negligence." Doc. No. 119, p. 17.

To this regard, Plaintiff cites the case of *FDIC v. Stahl,* 89 F.3d 1510 (11th Cir.

1996) for the proposition that "the Eleventh Circuit has already predicted that the court-created BJR presumption cannot 'elevate' an ordinary negligence statutory standard to 'gross negligence,' that prediction is binding on this Court." Doc. No. 92–1, p. 18. A review of the *Stahl* case shows that the Eleventh Circuit disagreed with courts that held that the BJR elevates the simple negligence statutory standard (under Florida law) to one of gross negligence. In *Stahl,* the Eleventh Circuit stated:

> The court-made BJR does not change Florida's pre–1987 statutory simple negligence standard to a gross negligence standard; it merely protects directors who exercised reasonable diligence in the first instance from liability on the merits of their business judgment, unless they acted fraudulently, illegally, oppressively, or in bad faith. Thus, based upon our above conclusion that § 1821(k) does not preempt state law establishing a lesser standard of fault than gross negligence, we hold the district court properly determined that the standard of care governing the actions of the directors in this case was ordinary negligence. Only if the directors met this standard were they entitled to the protection of the BJR.

*Id.* at 1518.

After review, the Court is not sure if *Stahl, Flexible Products,* and *Brock* Built can be completely reconciled; however, the Court does note, as correctly stated by Defendants, it would not be proper for a federal court to ignore state court decisions (issued by Georgia courts) in favor of a federal appellate decision analyzing a different state's substantive law. Doc. No. 110, p. 23.

 The Court is also well aware of the black letter law which holds that in the context of statutory interpretation,[9] courts will not rewrite the statute and that is not what the Court has done here. What the Court has done here is apply Georgia's "policy of judicial restraint" found in the context of the business judgment rule, which was "born of a recognition that [officers and directors] are, in most cases, more qualified to make business decisions than judges." *Brock,* 300 Ga.App. at 823, 686 S.E.2d 425. The Court also notes there is a "the difference between the standard of care, which is the standard of conduct expected of directors in their decision making, and the business judgment rule, which is the standard of review that determines whether directors will be held liable for a poor decision." Elizabeth S. Miller & Thomas E. Rutledge, *The Duty of Finest Loyalty and Reasonable Decisions: The Business Judgment Rule in Unincorporated Business Organizations?,* Del. J. Corp. L. 343, 352 (2005).

The comments to Georgia's corporate code, O.C.G.A. § 14–2–830, which as stated above, is similar to the banking code (O.C.G.A. § 7–1–490(a)), also provide insight to this regard. In these comments, the writers note that "[t]he elements of the business judgment rule and the circumstances for its application are continuing to be developed by the courts. In view of that continuing judicial development, [this code section] does not try to codify the business judgment rule or to delineate the differences, if any, between that rule and the standards of director conduct set forth in this section. That is a task left to the courts." O.C.G.A. § 14–2–830 cmt.

---

9. "Courts may not rewrite the language of a statute in the guise of interpreting it in order to further what they deem to be a better policy than the one Congress wrote into the statute." *Norelus v. Denny's, Inc.,* 628 F.3d 1270, 1300–01 (11th Cir.2010).

(1988).[10] The writers went on to state: "[w]here the standards of this section are met, there is no need to consider possible application of the business judgment rule. The possible application of the business judgment rule need only be considered if compliance with the standard of conduct set forth is not established." *Id.*

As stated above, it appears that when Georgia's business judgment rule is applied to claims for ordinary negligence, Georgia courts hold that such claims are not viable.[11] A dismissal of Plaintiff's ordinary negligence claims is thus, proper to this regard.

In conclusion, the Court finds the absence of a clear error of law so as to render reconsideration appropriate. Accordingly, the Plaintiff's Motion for Reconsideration is hereby **DENIED.**

## II. Motion for Summary Judgment

Plaintiff moves for summary judgment on three defenses raised in the Answer of Defendants Ernest, Hartsfield, Murphy, and Reynolds (i.e., failure to mitigate, reliance, and estoppel) on the ground that they are barred by the "no duty" rule as a matter of law.

## A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." [12]

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1260 (11th Cir.2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party's burden is discharged merely by

---

**10.** The Court has also reviewed and adhered to the comment notes, which indicate that the comments were prepared under the supervision of the State Bar, not the General Assembly and should not be considered as a "statement of legislative intention by the General Assembly...."

**11.** *See generally,* Ronald W. Stevens and Bruce H. Nielson, *The Standard of Care for Directors and Officers of Federally Chartered Depository Institutions: It's Gross Negligence Regardless of Whether Section 1821(k) Preempts Federal Common Law,* 13 ANN. REV. BANKING L. 169 (1994).

**12.** On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective. The amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-

judgment motions" and "are not intended to change the summary-judgment standard or burdens." Committee on Rules of Practice and Procedure, Report of the Judicial Conference, p. 14 (Sept. 2009). *Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 782 n. 4 (1st Cir.2011). "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a). Adv. Comm. Notes to Fed.R.Civ.P. 56 (2010 Amends.). Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule." *Murray v. Ingram,* No. 3:10–CV–348–MEF, 2011 WL 671604, at *2 (M.D.Ala. Feb. 3, 2011).

" 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th Cir.1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

All reasonable doubts should be resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine [dispute] for trial." *Id.* (citations omitted).

In the case *sub judice,* Plaintiff states that the present issue is a "purely legal issue" for which there are no material facts which are relied upon and/or are otherwise relevant. Doc. No. 93, pp. 1–2. In their responsive brief, Defendants have not alleged that there are material facts for consideration in the context of the present motion.

## B. Analysis

■ Plaintiff argues that the "no duty" rule should be applied here and the Court should grant partial summary judgment—declaring that the following defenses asserted in the Answer of Defendants Ernest, Hartsfield, Murphy, and Reynolds [Doc. No. 29] are unavailable as a matter of law: failure to mitigate (third defense); reliance upon bank examiners (eighth defense); and estoppel (fourteenth defense). Doc. No. 92–1, p. 23. Plaintiff argues that by asserting said defenses, Defendants are seeking to reduce their culpability based upon actions FDIC took as a receiver.[13]

■ Plaintiff argues that the three defenses at issue are barred as a matter of law under the "no duty" rule, as they relate to FDIC–R's post-receivership conduct.[14] Plaintiff states that the "no duty rule" is a "pre-FIRREA [Financial Institu-

13. "FDIC was created as part of the Federal Deposit Insurance Corporation Act as an instrument for insuring to a limited extent the deposits of the banks participating in the plan. The purpose of the Corporation is to promote the stability of the banking system by preventing runs on banks by depositors and keeping open the channels of trade and commercial exchange. FDIC facilitates its purpose by serving in two distinct capacities: as an insurer of deposits of member banks and as a receiver for insured banks that have failed. As insurer one of the primary duties of the Corporation is to pay depositors of a failed bank; as receiver FDIC marshals the assets of the failed bank, sells acceptable assets of the failed bank to a financially sound and insured bank, and purchases and liquidates the assets that are unacceptable to the assuming bank." *FDIC v. Harrison,* 735 F.2d 408, 411–12 (11th Cir.1984) (citations omitted).

14. Plaintiff had previously moved to strike these same defenses. Doc. No. 45. On February 27, 2012, the Court granted Plaintiff's motion to strike *in part* as to the pre-receivership conduct by the FDIC in its corporate, regulatory, non-receivership capacity—because FDIC-corporate is not a party before the court and its actions cannot form the basis of affirmative defenses against the FDIC in its receivership capacity. Doc. No. 84, pp. 24–29. The Court denied the remainder of the motion to strike as to the post-receivership conduct of the FDIC on the ground that a substantial legal issue remained.

tions Reform, Recovery, and Enforcement Act of 1989 [15]] common law rule established by a long line of cases that bank regulators—including the FDIC in either of its capacities [i.e., as insurer or receiver]—owe the bank and its directors and officers no duty...." Doc. No. 92–1, p. 23.[16] Plaintiff argues that said "no duty" rule survived the United States Supreme Court decision in *O'Melveny & Myers v. FDIC*, in which the Supreme Court held that "[t]here is no general common law." 512 U.S. 79, 83, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994). Plaintiff's survival argument is based upon the Eleventh Circuit's controlling *Motorcity en banc* decision in which the Court held that the *O'Melveny* analysis applies to the creation of a new common law rule and does not apply to the question of whether Congress intended to abrogate a previously established federal common-law doctrine. *Motorcity of Jacksonville, Ltd. v. Southeast Bank, N.A.*, 83 F.3d 1317 (11th Cir.1996) (en banc) ("*Motorcity I* "), *vacated & remanded for further consideration*, 519 U.S. 1087, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997), *reinstated & reaffirmed by* 120 F.3d 1140 (11th Cir.1997) (en banc) ("*Motorcity II* "), *cert. denied*, 523 U.S. 1093, 118 S.Ct. 1559, 140 L.Ed.2d 791 (1998). Plaintiff argues that like *Motorcity*, the case here, involves pre-existing common law, not the creation of new common law. Doc. No. 92–1, p. 19.

"The question of whether affirmative defenses may be asserted against the FDIC has been a contentious matter for some time." *FDIC v. Bierman*, 2 F.3d 1424, 1438 (7th Cir.1993)

As stated in this Court's order on the Plaintiff's motion to strike [Doc. No. 84], prior to 1994, the majority rule categorically precluded the directors of a failed bank from asserting such defenses against the FDIC. *Bierman*, 2 F.3d at 1438–39 (holding that affirmative defenses such as failure to mitigate may not be asserted against the FDIC in its receivership capacity) and *FDIC v. Mijalis*, 15 F.3d 1314, 1323 (5th Cir.1994) ("The great majority of the district courts is in accord with the conclusion reached by the *Bierman* court."). The courts that developed the rule insulated the FDIC from these defenses as a matter of federal common law, reasoning that: (1) the FDIC owes no duty to former directors of a failed bank, (2) public policy dictates that the directors who allegedly caused the bank's failure bear the risk of any errors of judgment, and (3) the FDIC's discretionary conduct within the meaning of the Federal Tort Claims Act (FTCA) in fulfilling its statutory mandate is not subject to judicial sec-

---

**15.** "Congress enacted FIRREA in 1989 in response to the growing crisis in the nation's banking and savings and loan industries. The statute authorizes appointment of a federally-created entity [FDIC–R (or its predecessor, the Resolution Trust Corporation (RTC)) ] ... as conservator or receiver of a failing or failed insured institution. The law provides the RTC with broad powers in its roles as conservator and receiver. Among those powers is the power to take over assets and operate the insured depositary institution, collect obligations and money due the institution, perform the functions of the institution consistent with its appointment as receiver or conservator, and preserve and conserve assets and property of the institution. *See* 12 U.S.C.

§ 1821(d)(2)(B). Once an institution has been placed in receivership, the RTC has the power to 'place the insured depository institution in liquidation and proceed to realize upon the assets of the institution.' " *Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1020–21 (11th Cir.1995); *see also Atherton v. FDIC*, 519 U.S. 213, 219, 117 S.Ct. 666, 671, 136 L.Ed.2d 656 (1997) (noting that the FDIC replaced the RTC).

**16.** Federal common law is the judicial creation of a special federal rule of decision. *Atherton v. FDIC*, 519 U.S. 213, 218, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997).

ond-guessing. *Id.* at 1438–39 and *Mijalis,* 15 F.3d at 1323–24.

The United States Supreme Court called this reasoning into question in its 1994 decision, *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). In *O'Melveny* the FDIC, acting in its capacity as receiver for a failed bank, sued a third party law firm alleging professional negligence and breach of fiduciary duty in the firm's representation of the bank. *O'Melveny,* 512 U.S. at 81–82, 114 S.Ct. at 2052. The rules of decision at issue in *O'Melveny* involved "the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that ha[d] already occurred." *Id.* at 88, 114 S.Ct. at 2055. The issue for the Court was: "whether, in a suit by the Federal Deposit Insurance Corporation (FDIC) as receiver of a federally insured bank, it is a federal-law or rather a state-law rule of decision that governs the tort liability of attorneys who provided services to the bank." *Id.* at 80–81, 114 S.Ct. at 2051. The Supreme Court held that with rare exceptions "there is no federal general common law." *Id.*[17]

In making this decision, the Supreme Court noted that the FDIC's brief attempted to show that federal common law governed the issue. *Id.* at 84, 114 S.Ct. at 2053. The Court noted that the FDIC's brief indicated that nonattribution to the corporation of dishonest officers' knowledge was the rule applied in the vast bulk of decisions from 43 jurisdictions ranging from Rhode Island to Wyoming. *Id.* In

considering the FDIC's argument, the Court held that there was no federal common law on the issue of nonattribution and even if there were, it saw "no reason why it would necessarily conform to that 'independently ... adopted by most jurisdictions.' " *Id.*

The Court explained that, except as otherwise delineated in FIRREA, state law governs the FDIC's rights and liabilities as receiver. *Id.* at 88, 114 S.Ct. at 2055. The Court held that the FDIC's argument that FIRREA as a whole demonstrates a high federal interest that confirmed the Court's authority to promulate common law was "demolished" by the provisions of FIRREA that specifically created special federal rules of decision regarding claims by and defenses against FDIC, as receiver. *Id.* at 86, 114 S.Ct. at 2054. The Court then delineated examples (within FIRREA) of the specially created rules and stated: "to create additional 'federal common law' exceptions is not to 'supplement' the scheme, but to alter it." *Id.* at 87, 114 S.Ct. at 2055. The Court concluded that this was not one of those extraordinary cases in which judicial creation of a federal rule of decision was warranted. *Id.* at 89, 114 S.Ct. at 2056.

The Court also referenced section 1821(d)(2)(A)(i) of FIRREA, providing for powers and duties of the FDIC as receiver, and stated that "[t]his language appears to indicate that the FDIC as receiver 'steps into the shoes of the failed [bank] ... obtaining the rights 'of the insured depository institution' that existed prior to

**17.** A later opinion of the United States Supreme Court provides additional guidance as to the existence of federal common law. *See Sosa v. Alvarez–Machain,* 542 U.S. 692, 726, 124 S.Ct. 2739, 2762, 159 L.Ed.2d 718 (2004) ("*Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), was the watershed in which we denied the existence of any federal 'general' common law, *id.,* at

78, 58 S.Ct. 817, which largely withdrew to havens of specialty, some of them defined by express congressional authorization to devise a body of law directly.... Elsewhere, this Court has thought it was in order to create federal common law rules in interstitial areas of particular federal interest.") (some citations omitted).

receivership. Thereafter, in litigation by the FDIC asserting claims of the [bank] ... 'any defense good against the original party is good against the receiver.' " *Id.* at 86, 114 S.Ct. at 2054.

The Court also stated that it had no authority to create a new federal common law cause of action to enrich the deposit insurance fund, as "there is no federal policy that the fund should always win." *Id.* at 88, 114 S.Ct. at 2055.

Following *O'Melveny*, there is now a split among district courts as to whether *O'Melveny* allows defendants to assert an affirmative defense against the FDIC as receiver. *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 93 F.Supp.2d 300, 305 (W.D.N.Y.2000). Many district courts have reconsidered whether federal common law can be applied to insulate the FDIC from affirmative defenses that are otherwise available under state law. *See FDIC v. Gladstone*, 44 F.Supp.2d 81, 85–87 (D.Mass.1999) and *FDIC v. Raffa*, 935 F.Supp. 119, 124–26 (D.Conn.1995). Some courts have distinguished cases in which the FDIC's own conduct is at issue from the facts in *O'Melveny*, which involved the conduct of a third party law firm. *See Raffa*, 935 F.Supp. at 124–26 and *FDIC v. Healey*, 991 F.Supp. 53, 61 (D.Conn.1998). These courts have held that federal common law survives in those cases where the FDIC's own conduct is at issue because of the potential for a "significant conflict" between the federal interests at stake and state law affirmative defenses that permit or require judicial scrutiny of the FDIC's discretionary actions. *See Healey*, 991 F.Supp. at 61.

Applying *O'Melveny* more broadly, other courts have held that the FDIC in its receivership capacity is subject to state law affirmative defenses except when FIRREA expressly provides otherwise. *Gladstone*, 44 F.Supp.2d at 86; *see also Ornstein*, 73 F.Supp.2d at 282, 284 (E.D.N.Y. 1999). These courts emphasize *O'Melveny's* clearly expressed rejection of the notion that federal common law should apply in an area that is otherwise governed by the detailed and comprehensive statutory scheme of FIRREA. *Gladstone*, 44 F.Supp.2d at 86. As one court summarized the primary holding of *O'Melveny*:

> FIRREA includes a number of tailored rules to be applied in suits by federal receivers, yet it does not include a provision barring the [various] affirmative defense[s] of [state law]. "What Congress chose to put in is to be enforced, and what it left out is not to be added by judicial fiat."

*Ornstein*, 73 F.Supp.2d at 284 (quoting *RTC v. Liebert*, 871 F.Supp. 370, 372 (C.D.Cal.1994)).

It appears undisputed that FIRREA does not impose a no duty rule.[18] In the absence of a statutory rule, Plaintiff asks the Court to apply a common law no duty rule and to look to the Eleventh Circuit's opinion in *Motorcity* for a conclusion that a common law no-duty rule survived *O'Melveny*.

As stated above, in *Motorcity*, the Eleventh Circuit considered whether the federal common law *D'Oench* doctrine was preempted by FIRREA in the context of a negligence suit brought by an automobile dealership (and its principal) against a failed bank, for which the FDIC was acting as receiver. The *D'Oench* doctrine is a federal common law doctrine of estoppel

---

**18.** There is some statutory language found in 12 U.S.C. § 1821(d)(6) and (13) concerning judicial review of claims relating to "acts and omissions" of the FDIC as receiver; however, this language has been interpreted as inapplicable to affirmative defenses. *See American First Federal, Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264–65 (11th Cir.1999).

created by the Supreme Court "to protect the FDIC from defenses raised by debtors based on 'secret agreements' with failed banks." *Motorcity I*, 83 F.3d at 1324. In the context of the *Motorcity I* ruling, the Eleventh Circuit rejected a D.C. Circuit ruling that concluded that the Supreme Court's ruling in *O'Melveny* led to the conclusion that the common law *D'Oench* doctrine had been preempted. *Id.* at 1327. The Eleventh Circuit held that "the question presented in *O'Melveny* was whether the federal courts should create a new federal common-law doctrine in an area in which Congress had not expressed any special concern, nor indicated that a special federal rule of decision should govern." *Id.* at 1330. The Eleventh Circuit held that the *O'Melveny* analysis did not apply to the question of *Motorcity*, which was framed as follows: "not whether a new rule should be invented, but whether Congress intended to abrogate the previously-established federal common-law *D'Oench* doctrine, which doctrine operates in an area of special federal concern as recognized by Congress, the Supreme Court, and the lower federal courts." *Id.*

The Eleventh Circuit held that the more appropriate guiding authority in the context of previously established federal common law is the Supreme Court's ruling in *United States v. Texas*, 507 U.S. 529, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) in which the Supreme Court held that the previously established federal common-law doctrine was presumed to survive congressional action unless a congressional intent to the contrary was evident. *Id.* The Eleventh Circuit stated that the *Texas* case "reaffirmed the principles that Congress

legislates against the background of the existing common law, and that Congress has legislated with an expectation that [the common] law will apply except when a statutory purpose to the contrary is evident." *Id.* at 1331. The Court concluded by holding that Congress did not intend to preempt the prior federal common law *D'Oench* doctrine. *Id.* at 1333.

After review, this Court agrees that the Eleventh Circuit has interpreted the *O'Melveny* opinion narrowly—as applying to the creation of a new federal common law rule and carrying forward the "presumption in favor of retaining existing federal common law unless a statutory purpose to the contrary is evident." 120 F.3d at 1143. In light of *Motorcity*, it appears to the Court that if the no duty rule is determined to be a matter of existing federal common law, in the absence of a statutory purpose to the contrary[19], said rule would survive the *O'Melveny* holding.[20] Thus, the Court must determine if the no duty rule was a matter of existing federal common law pre-FIRREA (or 1989). *See Motorcity I*, 83 F.3d at 1326 ("In the wake a mounting crisis in the banking and thrift industry, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, *inter alia*, 'to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default.'"). To this regard, Defendants argue that the "no duty rule" was not well-established pre-FIRREA.

The question of whether the no duty rule was existing and/or well-established

---

**19.** As stated above, it appears to be undisputed that FIRREA does not contain a "no duty" rule.

**20.** In making this ruling, the Court is unable to conclude that *O'Melveny* is therefore rendered absolutely irrelevant to the present case. As set forth, *infra*, *O'Melveny* still provides certain guiding principles that this Court will consider.

pre-FIRREA is one of the most important questions of the present analysis. A review of *O'Melveny* shows that the Supreme Court did not accept the numerous case citations that the FDIC provided to establish the common law of nonattribution and the Court seemed to demand more than case cites from other jurisdictions. 512 U.S. at 84, 114 S.Ct. at 2053. ("If there were a federal common law on such a generalized issue (which there is not), we see no reason why it would necessarily conform to that 'independently . . . adopted by most jurisdictions.' "). It is also important to note that the common law doctrines that were relied upon in *Motorcity* and the *United States v. Texas* had been established by the United States Supreme Court in the 1930s and 40s and both courts made note that the doctrines at issue were "long-standing." *Motorcity II*, 120 F.3d at 1143 and *Texas*, 507 U.S. at 533, 113 S.Ct. at 1634. In the case *sub judice*, the cases that the FDIC relies on to argue that the common law no duty rule existed pre-FIRREA are not of the same stature and in light of the *O'Melveny* language stated above, cause the Court concern.[21]

Plaintiff argues that the "rule has been applied to the FDIC as early as 1979 . . . ." and cites *First State Bank of Hudson Cnty. v. United States*, 599 F.2d 558 (3d Cir.1979) to this regard. The Court notes that the *First State Bank* case did not address "no duty" in the context of raising affirmative defenses against the FDIC and did not involve FDIC in its receivership capacity. The no duty holding of the *First State Bank* case is as follows: "[w]e hold that the Federal Deposit Insurance Act imposes no duty on the FDIC to warn the officers and directors of a bank about wrongdoing committed by one of its officials and discovered by the FDIC. The duty to discover fraud in their institutions is upon bank directors and they may not transfer it to the FDIC by the easy expedient of purchasing insurance protection from it." *Id.* at 563–64.

It has been held that the position that the FDIC–R is insulated from affirmative defenses attacking its conduct is derived from the 1988 district court case of *Federal Sav. and Loan Ins. Corp. v. Roy*, No. 87–1227, 1988 WL 96570, at *1 (D.Md. Jun. 28, 1988). *See FDIC v. Gladstone*, 44 F.Supp.2d 81, 85 (D.Mass.1999) (reviewing history of no duty rule in the affirmative defenses context).

In reviewing Eleventh Circuit precedent, it is clear that to date, there is no Eleventh Circuit opinion adopting the no duty rule and accordingly, the no duty rule was not well established in the Eleventh Circuit pre-FIRREA.[22] The absence of such authority leads to another question for the Court, unanswered by *Motorcity*— or the parties' briefs—specifically, if there is a presumption in favor of retaining existing federal common law and the Circuit in which the Court sits never adopted federal common law on the issue, should the

---

**21.** There are a number of district court decisions cited in Plaintiff's brief. There is no Eleventh Circuit appellate case adopting the no duty rule. Only the Fifth, Seventh, and Tenth Circuit have considered and adopted the no duty rule. *See FDIC v. Mijalis*, 15 F.3d 1314 (5th Cir.1994); *FDIC v. Bierman*, 2 F.3d 1424 (7th Cir.1993) (the FDIC brought suit in its corporate capacity); and *FDIC v. Oldenburg*, 38 F.3d 1119 (10th Cir.1994). The Fifth and Seventh Circuit decisions were pre-

*O'Melveny*. The Tenth Circuit decision was post-*O'Melveny*, but does not discuss *O'Melveny* in its analysis.

**22.** The Court notes that there is one 1992 decision out of the Northern District of Georgia setting forth the no duty rule; however, this case was not based upon Eleventh Circuit precedent. *See Resolution Trust Corp. v. Youngblood*, 807 F.Supp. 765 (N.D.Ga.1992).

Court apply the asserted common law (of other jurisdictions) to the facts of the case presently before it without further consideration?

■ Plaintiff has cited no authority (and the Court has found no so authority) which shows that the common law adopted in other circuits is binding upon this Court. In fact, this Court is only bound by decisions of the Eleventh Circuit Court of Appeals and the United States Supreme Court. The Court is, however, permitted to look to the decisions of other district courts and circuits, as persuasive authority. *See McGinley v. Houston,* 361 F.3d 1328, 1331 (11th Cir.2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions. A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.") and *Roe v. Michelin North America, Inc.,* 613 F.3d 1058, 1062 (11th Cir.2010) ("we consider decisions from other circuits as persuasive authority.").

■ In answering the Court's own question, it appears to the Court that use of common law is an independent determination for each court/circuit. It also appears to the Court that it should not blindly apply the non-binding common law of other jurisdictions without first considering guiding principles (as to common law and FIRREA/FDIC policy) of the appellate courts under which it is bound. *Cf. O'Melveny* 512 U.S. at 84, 114 S.Ct. at 2053 ("[i]f there were a federal common law on such a generalized issue ..., we see no reason why it would necessarily con-

form to that 'independently ... adopted by most jurisdictions.'"). Accordingly, the Court will first consider Eleventh Circuit precedent concerning the propriety of common law and FIRREA/FDIC policy.

In *Resnick v. Uccello Immobilien GMBH, Inc.,* 227 F.3d 1347, 1350 n. 4 (11th Cir.2000), the Eleventh Circuit stated: "[w]e **generally disfavor federal common law** and apply it in *only* rare instances concerning 'rights and obligation[s] of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases.'" (emphasis added). The Court notes that in *O'Melveny,* the United States Supreme Court held that "the FDIC is not the United States ...." 512 U.S. at 85, 114 S.Ct. at 2053; *see also Atherton v. FDIC* 519 U.S. 213, 225, 117 S.Ct. 666, 673, 136 L.Ed.2d 656 (1997) ("we note that here, as in *O'Melveny,* the FDIC is acting only as a receiver of a failed institution; it is not pursuing the interest of the Federal Government as a bank insurer ...."). The Court further notes that it is not settled as to whether FDIC, as receiver, is a federal agency. *See* Adam Shajnfeld, *An Identity in Disarray: The Federal Deposit Insurance Corporation's Government–Agency Status,* 128 BANKING L.J. 36, 37 (2011) (exploring the question of whether the FDIC, when acting as a failed bank's receiver, is considered an agency of the United States, or merely a private party). Under the above-stated authority, it would appear (in the absence of one of the stated "rare" instances, such as a case involving the United States) that this is not a case in which common law is to be applied in the Eleventh Circuit.[23]

---

**23.** The Court recognizes that in light of the *Motorcity* holding, there is an argument that the Eleventh Circuit has applied common law in the instance of FDIC acting in its receiver-

ship capacity. *See Motorcity I,* 83 F.3d at 1328 (recognizing that "federal courts have created and applied federal common law

The Court next considers Eleventh Circuit authority concerning FDIC and FIRREA policies. The cases which provide guidance are: *FDIC v. Harrison*, 735 F.2d 408 (11th Cir.1984); *FDIC v. Jenkins*, 888 F.2d 1537 (11th Cir.1989); *Resolution Trust Corp. v. Artley*, 28 F.3d 1099 (11th Cir.1994); and *Gibson v. Resolution Trust Corp.*, 51 F.3d 1016 (11th Cir.1995).

In *Harrison*, the FDIC filed suit against two guarantors of a promissory note. The notes had been purchased by FDIC, as receiver for an insolvent bank. The FDIC made a demand on the note. One of the guarantors contacted the FDIC to find out the total amount of his liability and was informed that he need only pay his own note and would not be held liable for the guaranty. The guarantor sent a confirmation letter to this regard and a check marked "payment in full" which was cashed without protest. Over eighteen months later, the FDIC sent another demand letter on the guaranty and then, filed suit.

The district court concluded that the FDIC was equitably estopped from asserting its claim against the guarantors. In affirming the district court, the Eleventh Circuit recognized that "[f]ederal law on the question whether a government agency may be estopped has been unevenly shifting over the decades." 735 F.2d at 410. The Eleventh Circuit then considered the role (i.e., sovereign or proprietary) in which the FDIC was acting in this case. The Court concluded that the FDIC had acted in its proprietary capacity, which it defined as "essentially commercial transactions involving the purchase or sale of goods and services and other activities for the commercial benefit of a particular

agency ... government activities ... analogous to those of a private concern." *Id.* at 411.[24] The Eleventh Circuit then reviewed the dual capacities of the FDIC, as insurer of deposits of member banks (corporate) and as receiver for insured banks that have failed. *Id.* at 412. The Eleventh Circuit stated that the FDIC was acting as receiver of the insolvent bank and "in its corporate capacity purchased the notes ... and demanded their payment." *Id.* The Court stated that "the Corporation performed essentially the same function as any other assuming bank that may have acquired some of the assets of a failed bank." *Id.* The Court further stated: "[a]lthough the issue has not been addressed in this circuit, other courts have held that when FDIC acts in its corporate capacity as receiver, its liability must be determined in the same fashion as that of a private party." *Id.* The Eleventh Circuit saw no reason not to apply the traditional rules of equitable estoppel to the conduct of the FDIC in this case. The Court explained its ruling as follows:

> As a holder of the three promissory notes, FDIC was acting as any liquidating agent or receiver of an insolvent bank. Although the debt collection activities of the Corporation, like the activities of any government agency, might be viewed in a broad sense as contributing to the accomplishment of the Corporation's purpose of maintaining a stable banking environment, FDIC was primarily serving as an instrument of the banking industry when it became receiver for the failed [bank]. **As would any other receiver or liquidating agent, FDIC should be required to deal fairly with its debtors and should be held**

---

when necessary to protect certain 'uniquely federal interests.' ").

**24.** Sovereign capacity was defined as carrying out "unique governmental functions for the benefit of the whole public ...." 735 F.2d at 411.

**accountable for the representations of its agents.** Had [the] promissory note been acquired by a financially sound bank in a "purchase and assumption" transaction, the assuming bank would be subject to the doctrine of equitable estoppel. **The Corporation should be treated no differently.**

*Id.* at 412 (emphasis added). The Court also considered the effect on the public treasury in making its ruling, but noted that the prior precedent indicated that the FDIC's profits "do not inure to the benefit of the United States and its losses are not borne by the United States. The Corporation sustains itself principally through insurance premiums assessed against member banks." *Id.* at 412, n. 5. The Court concluded that the public treasury would be "unaffected by FDIC's success or failure in the action." *Id.*[25]

In *Jenkins*, the Eleventh Circuit reviewed the issue of whether the FDIC was entitled to an absolute priority to assets of officers, directors and other third parties who may have been responsible for the failure of a bank, with such failure leading to a purchase and assumption transaction by the FDIC, acting as receiver. 888 F.2d at 1538. At the district court level, "[t]he FDIC ... sought a declaration that as a general creditor of [the failed bank] and assignee of any causes of action owned by [the failed bank], the FDIC's claims against the officers, directors and other

defendants should have priority over the shareholder's claims against the parties." *Id.* at 1538–39. The FDIC's argument in favor of priority, *inter alia,* was that it "would best aid the FDIC in replenishing the permanent insurance fund." *Id.* at 1540–41. The district court found that none of the cases cited by the parties held that the FDIC had absolute priority over other claims; however, policy considerations supported the FDIC's position. The district court ruled in the FDIC's favor and granted an injunction which gave FDIC priority status over the claims at issue.

In reversing the district court, the Eleventh Circuit noted that its conclusion was based upon the recently enacted Financial Institution Reform, Recovery, and Enforcement Act of 1989. *Id.* at 1538, n. 1. The Eleventh Circuit agreed that the preservation of the permanent insurance fund is vital to the continued health of the nation's banking system, but further held that it could not "approve of judicial expansion of the express powers and rights granted to the FDIC in the Act by Congress." *Id.* at 1541. The Court stated: "[a]s the Federal Deposit Insurance Act contains no indication of an intention to create an absolute priority rule in favor of the FDIC, we must reverse the district court's finding based on policy considerations in favor of such a rule for the FDIC." *Id.* The Eleventh Circuit also de-

---

**25.** The Court recognizes that *Harrison* predates the enactment of FIRREA and did not involve directors and officers as alleged wrongdoers; however, *Harrison* has never been overruled by the Eleventh Circuit. Accordingly, it still constitutes binding authority of the Eleventh Circuit, under which this Court is bound. The Court further notes that even if *Harrison* pre-dates FIRREA, it is still provides guidance because it was issued in the applicable time period under which Plaintiff states that the no duty rule existed. The fact that the case was against a third party, non-director/officer, while a distinguishing factor, does not render the case of no value to the present analysis. The Court also recognizes that in the context of the motion to strike [Doc. No. 65, p. 5, n. 1.], Plaintiff argued that *Harrison* is distinguishable because it involved the FDIC suing in its corporate capacity; however, the Court is unable to give great weight to this distinction because throughout the opinion, the Eleventh Circuit makes reference to the receiver's acts and appears to rule on the issue, based on the acts performed, not necessarily the titles utilized.

clined to fashion a common law absolute priority rule. The Court stated: "[t]he problem with applying a federal common law rule in this case is that the Federal Deposit Insurance Act does not compel the FDIC to pursue claims to restore the deposit insurance fund against third parties who may have harmed a failed bank." *Id.* at 1546. The Court further stated: "[w]e are not convinced that Congress considered collections against parties such as the bank-related defendants in this case as a necessary part of the recovery to the deposit insurance fund. Any such priority over third-party lawsuits will have to come from Congress, not this Court." *Id.*[26]

In *Resolution Trust Corp. v. Artley,* the RTC, as receiver of an insolvent bank,[27] brought suit against former officers and directors, alleging claims of negligence, gross negligence, breach of fiduciary duty, and breach of contract in connection with real estate loans. The defendants moved for partial summary judgment on the ground that most of the claims were time barred. The district court adopted the federal common-law doctrine of "adverse domination" to toll the applicable statute of limitations. 28 F.3d at 1101. The Eleventh Circuit reversed and remanded the district court's application of the federal common law doctrine to toll the statute of limitations. The Eleventh Circuit stated:

> RTC also speaks generally about "comprehensively regulated federal programs," arguing that a state tolling law frustrates the banking system. **In this case, however, RTC is not "regulating" a bank, at least not in the ordinary sense; instead, RTC is a plaintiff, in possession of [the bank's] assets, pursuing claims on behalf of the institution. "[A] state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation.** If success were the benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant." *Robertson v. Wegmann,* 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978); *see also O'Melveny,* 512 U.S. at 88, 114 S.Ct. at 2055 ("there is no federal policy that the fund should always win").
>
> Congress was free to establish a uniform limitations period reaching back several years. It did not. RTC's claims, except for claims ... were barred under Georgia's statute of limitations and tolling laws.

*Id.* at 1103 (emphasis added).

In *Gibson v. Resolution Trust Corp.,* the RTC[28] was appointed as a conservator for a troubled bank and repudiated a contract in which plaintiffs/law firm and the bank were parties. Under the contract, $11 million of the bank's assets were deposited into an account to be used for indemnification purposes to fund legal fees and damage awards resulting from claims made against the banks officers and directors. After the bank received notice that it was going to be subject to increased regulation,

---

**26.** In the context of the motion to strike [Doc. No. 65, p. 5], the FDIC argued that *Jenkins* is irrelevant because it is a corporate assignee case and did not analyze the no duty rule. The Court recognizes said argument; however, the Court finds that *Jenkins* still provides guidance as to the Eleventh Circuit's interpretation of FDIC policy and common law.

**27.** *See* note 13, *supra.* RTC was the predecessor of FDIC–R.

**28.** *Id.*

the contract was amended to allow the fund to be used for payments of any judgments against officers and directors. The plaintiffs brought suit against the RTC and the RTC counterclaimed for a declaration that it had properly repudiated the contract. The plaintiffs alleged, *inter alia,* that the FDIC stood in the shoes of the failed bank and as such, was estopped from repudiating the agreement. The district court declared that RTC's repudiation was proper. In affirming the district court, the Eleventh Circuit reviewed the policy of FIRREA and also reviewed the role of FDIC as conservator or receiver. The Court used the terms "conservator" and "receiver" almost interchangeably. The Court specifically stated: "in the instant case, the RTC as receiver seeks to exercise its authority under federal law to repudiate the Agreement . . . ." 51 F.3d at 1025. The Eleventh Circuit recognized that an affirmative defense of equitable estoppel could lie against the government, but limited the ruling by stating: "[a] defense of equitable estoppel to a federal cause of action will lie against the government only in the most extreme circumstances." 51 F.3d 1016, 1025 (11th Cir. 1995). The Eleventh Circuit did not apply a no duty rule in the context of its analysis. *See also Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 423, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990) ("But it remains true that we need not embrace a rule that no estoppel will lie against the Government in any case in order to decide this case. We leave for another day whether an estoppel claim could ever succeed against the Government.").[29]

After reviewing the holdings of *Harrison, Jenkins, Artley,* and *Gibson* (and after recognizing their distinguishing factors), the Court generally concludes as follows in regard to the Eleventh Circuit: it has held that the FDIC should be accountable for the representations of its agents; it has allowed an equitable estoppel. defense to go forward in a non-director/officer FDIC suit; it has considered FDIC policy statements and FIRREA and declined to approve judicial expansion of FDIC rights and powers granted by Congress; it has appeared to cite with approval, the language in *O'Melveny* providing that there is no federal policy that the FDIC fund should always win; and it has considered (without absolutely barring) promissory estoppel as a defense against the FDIC in a statutory claim for repudiation of a contract.

The Court also agrees with a fellow district court, which held that the Eleventh Circuit's post 1989 opinions suggest that it "does not take an expansive view of the public policy considerations underlying the passage of FIRREA." *Resolution Trust*

**29.** While not addressing the similar facts before the Court, another statement of the Eleventh Circuit policy on FIRREA is found in *Bank of Am. v. Colonial Bank,* 604 F.3d 1239 (2010) in which the Eleventh Circuit reviewed the district court's grant of a preliminary injunction against the FDIC. The Court focused on "Section 1821(j) of FIRREA [which] provides in relevant part: no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." *Id.* at 1243. The Court noted that "[t]his provision has been interpreted broadly to bar judicial intervention whenever the FDIC is acting in its capacity as a receiver or conservator, even if it violates its own procedures or behaves unlawfully in doing so." *Id.* The Court agreed that an injunction should not issue, but noted that the plaintiff was not left without a remedy. The Court stated: **"Congress contemplated the reality that the FDIC may err in its determination of receivership claims** and provided all claimants with the remedy of de novo review in federal court of the FDIC's claims determination." *Id.* at 1244 (emphasis added).

*Corp. v. Holland & Knight,* 832 F.Supp. 1532, 1538 (S.D.Fla.1993). The Court also agrees with the recent holdings of the Honorable Robert L. Vining, Jr., Senior United States District Judge, Northern District of Georgia in which he declined to strike certain affirmative defenses in the context of the FDIC suing a third party professional. *See FDIC v. Jampol, Schleicher, Jacobs & Papadkis, L.L.P.,* No. 10–cv–3382 (N.D.Ga. May 12, 2011) and *FDIC v. Anderson, Tate & Carr, P.C.,* No. 1:10–cv–3383 (N.D.Ga. May 11, 2011). In these two cases, Judge Vining reviewed the holdings of *Harrison* and *Jenkins* and concluded that they suggest that the FDIC should be treated as an ordinary private plaintiff in certain circumstances. Judge Vining further noted that the Eleventh Circuit also specifically rejected the FDIC's attempts to expand its powers beyond that clearly allowed by statute.[30] Judge Vining also drew from the "standing in the shoes" language of prior case law and held that "[b]ecause FDIC is merely 'standing in the shoes' of the [failed bank] here, it is logical that the defendants can raise the same affirmative defenses that the defendants could have raised against [the bank]." *Id.*[31]

In a similar case, *FDIC v. Cherry, Bekaert & Holland,* 742 F.Supp. 612, 614 (M.D.Fla.1990), the district court reviewed the Eleventh Circuit's holdings in *Jenkins* and *Harrison* to form a conclusion that "the FDIC as plaintiff [as corporate assignee in a third party defendant action involving alleged negligent auditors] is acting in a normal commercial context and should be treated no differently than another other litigant."

In regard to the specific defenses at issue (i.e., failure to mitigate, reliance, and estoppel), of particular concern is the duty to mitigate defense—to which Defendants cite to O.C.G.A. § 51–12–11 (setting forth Georgia's duty to mitigate) and persuasive authority, which holds that "the duty to mitigate damages is not, literally speaking, a duty to any other party." *FDIC v. Gladstone,* 44 F.Supp.2d 81, 87 (D.Mass. 1999); *see also* Jeffrey K. Riffer and Elizabeth Barrowman, *Recent Misinterpretations of the Avoidable Consequences Rule: The "Duty" to Mitigate and Other Fictions,* 16 HARV. J.L. & PUB. POL'Y 411, 411 (1993). Plaintiff does not specifically negate Defendants' argument that the duty is more of a general duty, not owed to the other party, but argues that it is a distinction without difference in that imposing

---

**30.** Judge Vining also declined to uphold the FDIC's discretionary function, Federal Tort Claims Act, and state tort claims act arguments. The Court notes that similar arguments were raised in the context of the motion to strike [Doc. No. 45], but have not been carried forward in the context of the motion for summary judgment in the case *sub judice.* In the absence of specific arguments from the parties, the Court will not *sua sponte* address these arguments.

**31.** On motion for reconsideration/summary judgment, Judge Vining agreed with the FDIC that the defendants were precluded as a matter of law from challenging the FDIC's discretionary decision to sell the note in question, but further held that there was confusion on the FDIC's part n that the Court was not

reading the defendants' pleadings as challenging the sale of the note. The Court also added a conclusion that the FDIC "improperly attempt[ed] to segregate its own actions from those of [the failed bank]." *Jampol,* No. 1:10–cv–03382, Doc. No. 128 (N.D.Ga. Apr. 20, 2012).

The Court also recognizes the FDIC–R's contrary position [Doc. No. 65, p. 10, n. 6] that its actions would not be in issue if the other bank were in the case, because it would not be involved. The Court recognizes this distinction, but it is not determinative, as whatever party is in the shoes of the failed bank would be performing some type of action for the failed bank, and it is those actions that are subject to review.

such a duty would affect the receiver in performing its public function. Doc. No. 119, pp. 30–31.

After review, the Court agrees with Defendants that under Georgia law, the duty to mitigate appears to be a general duty and is not dependent on a duty owed by the FDIC to the Defendants. *See* O.C.G.A. § 51–12–11 ("When a person is injured by the negligence of another, he must mitigate his damages as far as is practicable by the use of ordinary care and diligence. However, this duty to mitigate does not apply in cases of positive and continuous torts.") and *Butler v. Anderson,* 163 Ga.App. 547, 547, 295 S.E.2d 216, 217 (1982) ("Under [Georgia code], an injured plaintiff is under a general duty to lessen damages as far as is practicable by the use of ordinary care and diligence.").

The Court is unable to uphold Plaintiff's receiver/public function arguments, as FIRREA imposes a duty to minimize losses, and "these generalized statutory duties are entirely consistent with a duty to mitigate." *FDIC v. Ornstein,* 73 F.Supp.2d 277 (E.D.N.Y.1999); *see* 12 U.S.C. § 1821(13)(E) ("Disposition of assets. In exercising any right, power, privilege, or authority as conservator or receiver in connection with any sale or disposition of assets of any insured depository institution for which the Corporation has been appointed conservator or receiver, including any sale or disposition of assets acquired by the Corporation under section 1823(d)(1) of this title, the Corporation shall conduct its operations in a manner which—(i) maximizes the net present value return from the sale or disposition of such assets; (ii) minimizes the amount of any loss realized in the resolution of cases; (iii) ensures adequate competition and fair and consistent treatment of offerors; (iv) prohibits discrimination on the basis of race, sex, or ethnic groups in the solicitation and consideration of offers; and (v) maximizes the preservation of the availability and affordability of residential real property for low- and moderate-income individuals."). The Plaintiff's argument distinguishing particular and overall losses is unavailing. *See also Resolution Trust Corp. v. Artley,* 28 F.3d 1099, 1103 (11th Cir.1994) ("In this case, however, [FDIC–R] is not 'regulating' a bank, at least not in the ordinary sense; instead, [FDIC–R] is a plaintiff, in possession of [a failed bank's] assets, pursuing claims on behalf of the institution." "[A] state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation.").

In addition, failure to proceed in accordance with the statute would render the FDIC acting contrary to its statutory mandate and in a non-discretionary manner. *Id.*

As to the other two defenses (i.e., reliance and estoppel), the Court notes that neither party has presented an actual statement of factual circumstances under which these two defenses were raised— thus, this Court's ruling is limited only as to the no duty issue. In the absence of the underlying factual circumstances, the Court makes no ruling as to the actual validity of said defenses.

On the whole, while the policy of the no duty rule is rationally based (and would seem to be appropriate in the context of a bank director being found liable for wrongdoings involving the bank), it is not for this Court to apply such a policy or rule in the absence of binding authority indicating that such application is proper. The Court's review of binding Eleventh Circuit authority shows that common law is generally disfavored in the absence of certain circumstances, not presented here. In addition, the Court's review of Eleventh Circuit authority leads to the conclusion that

the Court should not judicially expand the powers and rights of the FDIC in the absence of an act of Congress or Supreme Court authority, such as the *D'Oench* doctrine. It also appear to the Court that the duty to mitigate is a general duty, not specifically owed to the defendants. Accordingly, the Court declines to adopt and apply a common law no duty rule in the present case.

The Plaintiff's motion for partial summary judgment [Doc. No. 92] is hereby **DENIED**.

### III. Motion to Certify Orders for Interlocutory Appeal

A district court may certify an order of interlocutory appeal under 28 U.S.C. § 1292(b) if (1) it involves a "controlling question of law;" (2) there is "substantial ground for difference of opinion" with respect to that question; and (3) immediate appeal "may materially advance the ultimate termination of the litigation."

It is the opinion of this Court that this order involves a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

The Plaintiff's Motion to Certify Orders for Interlocutory Appeal is hereby **GRANTED**.

### IV. Conclusion

Plaintiff's Motion for Reconsideration [Doc. No. 92] is hereby **DENIED** on all grounds. In the interest of caution, the Court hereby vacates the following sentence in its February 27, 2012 order (at Doc. No. 84, p. 16):

O.C.G.A. § 7–1–490 provides in relevant part that "[a] director or officer who so performs his duties [essentially in good faith] shall have no liability by reason of being or having been a director or officer of the bank or trust company."

The Court inserts the following sentence in its place:

O.C.G.A. § 7–1–490 provides in relevant part that "[a] director or officer who so performs his duties [essentially in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions] shall have no liability by reason of being or having been a director or officer of the bank or trust company."

Plaintiff's Partial Summary Judgment [Doc. No. 92] as to the application of the "no duty" rule to the three defenses of failure to mitigate, reliance, and estoppel is hereby **DENIED**.

Plaintiff's Motion in the Alternative to Certify the Order for Interlocutory Appeal under 28 U.S.C. § 1292(b) [Doc. No. 92] is hereby **GRANTED**.