[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12204

_____

D.C. Docket No. 8:09-cv-02221-JSM-MAP


PLACIDA PROFESSIONAL CENTER, LLC,

Plaintiff - Cross Appellant - Appellee,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION,

Defendant - Cross Appellee - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 13, 2013)

Before MARCUS and MARTIN, Circuit Judges, and GOLD,[*] District Judge.

GOLD, District Judge:

_____

[*] Honorable Alan Stephen Gold, Senior United States District Judge for the Southern District of Florida, sitting by designation.

This appeal involves repudiation of a Construction Loan Agreement by the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for Freedom Bank, and the denial of a Proof of Claim for repudiation damages filed by Placida Professional Center, LLC ("Placida"). After the FDIC denied its claim, Placida filed suit seeking declaratory judgment that the FDIC's termination of the Construction Loan Agreement terminated the Agreement and other related agreements, and also seeking repudiation damages under 12 U.S.C. § 1821(e) of the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). The district court dismissed the declaratory judgment count for lack of subject matter jurisdiction pursuant to FIRREA's anti-injunction provision, 12 U.S.C. § 1821(j), and entered partial summary judgment in favor of Placida and against the FDIC on the issue of liability for repudiation damages. The district court excluded a portion of Placida's expert's testimony on the issue of amount of damages, and, following a bench trial, awarded Placida repudiation damages in the amount of $960,000.00. The court permitted those damages to be setoff against amounts owed by Placida to the FDIC or its successors, and awarded Placida attorneys' fees pursuant to fee provisions contained in the loan documents.

Appellant – Cross Appellee FDIC appeals the district court's setoff of repudiation damages against amounts owed the FDIC or its successors and the

2

court's attorneys' fees award.[1] Appellee – Cross Appellant Placida appeals the district court's dismissal of its request for declaratory judgment and exclusion of portions of its experts proposed testimony without a Daubert hearing. See Daubert v. Merrell Dow Pharm., Inc. ("Daubert"), 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

We conclude the district court erred in dismissing Placida's request for declaratory relief regarding the Construction Loan Agreement, Commercial Loan Note ("Note"), and Mortgage and Security Agreement ("Mortgage"). Because Placida exhausted its claim for declaratory relief through the § 1821(d) administrative claims process, the district court had subject matter jurisdiction over the claim pursuant to § 1821(d)(6). We further conclude the district court erred in permitting Placida to setoff its repudiation damages against monies owed to the FDIC or its successors, as this setoff violates the distribution scheme set forth in 12 U.S.C. § 1821(d)(11)(A). The district court also erred in awarding attorneys' fees in favor of Placida because the relevant loan documents do not contain attorneys' fee provisions that apply to the instant proceedings. Finally, we affirm the district court's partial exclusion of the testimony of Placida's expert because, even absent a Daubert hearing, Placida was given adequate opportunity to lay the foundation

---

[1] The FDIC does not appeal the district court's cost award.

for its expert's testimony. We therefore affirm in part, reverse in part, and vacate in part the judgment below and remand for further proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Facts[2]

On February 28, 2007, Placida and Freedom Bank entered into a Construction Loan Agreement, Note, and Mortgage in which Freedom Bank agreed to loan Placida a total of $3,280,000.00 for the construction of a professional office center in Charlotte County, Florida. Sheryl A. Edwards and Michael B. Edwards are co-managing members of Placida and, in their individual capacities, guarantied the Note ("Guaranty").

Under the Construction Loan Agreement, $240,000.00 of the principal amount was to be reserved for interest payments on the loan during construction and for a reasonable period of time upon completion. The Agreement provided that disbursements from the loan would be made upon submission of a draw request to the bank and after inspection by the bank's inspector. The Agreement further provided that upon substantial completion, all remaining funds from the Agreement would be disbursed to Placida.

---

[2] The parties stipulated to the essential facts and the district judge adopted these stipulated facts in the Final Judgment. We incorporate the stipulated facts and add additional facts from the record, as necessary.

Construction on the project proceeded according to schedule until October 15, 2008. During construction, interest only payments were automatically paid on the 28th of each month from the reserve held by Freedom Bank. As of October 30, 2008, Freedom Bank had disbursed, pursuant to monthly draw requests, $1,597,504.20 from the loan. The interest payment due on October 28, 2008 was paid on October 30, 2008. After the October 2008 interest payment, $1,682,495.68 remained in the loan account and, as of the end of October, the loan was in good standing in all respects and was not in default.

On October 31, 2008, the FDIC was appointed as receiver for Freedom Bank. Placida submitted a draw request on November 4, 2008, seeking $45,948.50 for payment of contractors for work performed in October 2008. On November 6, 2008, the FDIC notified Placida that it was exercising its right of repudiation of the Construction Loan Agreement under § 1821(e) of FIRREA. The FDIC stated it would not fund further draws from the construction loan and the interest reserve, having concluded that continued performance of the loan would be burdensome, and repudiation would promote the orderly administration of Freedom Bank's affairs.

On February 4, 2009, Placida submitted a Proof of Claim to the FDIC requesting, as compensatory damages for repudiation of the Construction Loan Agreement, a termination of all loan documents, including the Construction Loan

5

Agreement, Note, Mortgage, and Guaranty, and, alternatively, requesting compensatory damages pursuant to a sales comparison or loss of market value approach.[3] Placida's claim was signed by Sheryl A. Edwards as managing member of Placida, but neither Sheryl A. Edwards nor Michael B. Edwards submitted a claim on their own behalf. Although Placida attached to its claim documentation evidencing that the October 28, 2008 interest payment was made, the FDIC, on September 1, 2009, issued a Notice of Disallowance of Claim, stating, "The claim was deemed to be without merit since the loan has been in default since October, 2008 and therefore, not proven to the satisfaction of the Receiver."[4] In the Notice, the FDIC advised Placida of its right to seek judicial review pursuant to 12 U.S.C. § 1821(d)(6) within 60 days from the date of the Notice. The FDIC did not contend

---

[3] Specifically, Placida's Proof of Claim requested the following:

> As its primary demand for damages, Placida seeks a termination of all Loan Documents, including the Note, Mortgage, Loan Agreement and Guaranties, since the Loan Documents, including the Loan Agreement, constitute a "single integrated transaction." Thus when the FDIC repudiated the obligation of Freedom to continue to fund Construction Draws, it likewise terminated both parties' obligations under the Loan Documents, since the Loan Documents as a whole, constitute a "single, integrated transaction."

> Therefore, as compensatory damages, Placida and the Principals demand cancellation and satisfaction of the Loan Documents, including the Note, Mortgage and Guaranties.

[4] The FDIC later conceded that, as of the date of the appointment of FDIC as Receiver for Freedom Bank, and as of the date FDIC repudiated the Construction Loan Agreement, the loan "was in good standing in all respects and was not in default."

6

that Placida's request for termination of all loan documents was brought improperly in the claims process.

## B.    Procedural History

Upon denial of Placida's claim, Placida, Michael B. Edwards, and Sheryl A. Edwards brought suit in federal district court seeking (1) a declaratory judgment declaring that the FDIC's repudiation of the Construction Loan Agreement terminated both Placida and the FDIC's obligations under that Agreement, and declaring the Note, Mortgage, and Guaranty of no further force or effect, (2) repudiation damages against the FDIC, as receiver of Freedom Bank, as well as reasonable attorneys' fees and costs, in favor of Placida, and (3) setoff of any damages awarded to plaintiffs against sums allegedly owed by the Edwards to Freedom Bank on a separate loan, referred to by the parties as the Fruitville loan.[5]

On February 9, 2010, three months after Placida commenced suit, the FDIC transferred the Placida loan and the Fruitville loan as part of a $799,171,415.14

---

[5] As noted above, the Edwards are co-managing members of Placida and personally guaranteed the Commercial Loan Note. According to the Amended Complaint, on January 5, 2006, Freedom Bank and the Edwards executed a loan agreement, promissory note, and other documents whereby Freedom Bank provided purchase money financing for the acquisition of real property located in Sarasota County, Florida (the Fruitville loan). In Count III of the Amended Complaint, the Edwards sought setoff of repudiation damages awarded to the plaintiffs against monies owed by the Edwards to the FDIC under the Fruitville loan.

7

pool of loans to Multibank 2009-1 CML ADC Venture, LLC ("Multibank"). The FDIC is owner of a 60% interest in Multibank.[6]

On November 2, 2010, the district court dismissed plaintiffs' affirmative claim for setoff, concluding the claim was premature because setoff is a defensive claim to diminish liability, not an affirmative claim for relief. The district court also dismissed plaintiffs' declaratory judgment count, concluding the requested relief was barred by FIRREA's anti-injunction provision, 12 U.S.C. § 1821(j).

On October 18, 2011, the district court dismissed all remaining claims of the individual plaintiffs Michael B. Edwards and Sheryl A. Edwards because they both failed to timely file administrative claims with the FDIC, as required by 12 U.S.C. § 1821(d). As to the issue of repudiation damages in favor of Placida, the court entered partial summary judgment in favor of Placida on the issue of liability, finding the FDIC liable for repudiation damages and noting that the FDIC "conceded that it is so liable."[7] The district court also excluded in part the proposed testimony of Placida's expert, Richard W. Bass. The district court relied on the parties' pleadings, including an affidavit from Mr. Bass, and did not hold a Daubert hearing.

---

[6] The agreement governing the transfer of assets from the FDIC to Multibank is not part of the record on appeal.

[7] In its Motion for Partial Summary Judgment, the FDIC conceded that, as of the date of the appointment of FDIC as Receiver for Freedom Bank and as of the date of repudiation, the loan "was in good standing in all respects and was not in default."

The issue of the amount of repudiation damages proceeded to bench trial. The district court awarded $960,000.00 in damages in favor of Placida. The court also ordered that the damages be setoff against amounts owed by Placida to the FDIC or its successors, fixed and measured as of the date of the receivership. Finally, the district court concluded Placida was entitled to an award of attorneys' fees and costs pursuant to the fee provisions in the Note and Mortgage, together with the reciprocal provisions of Fla. Sta. § 57.105(7). The district court subsequently awarded Placida fees and costs in the amount of $193,175.12.

As discussed above, both Placida and the FDIC appealed. Michael B. Edwards and Sheryl A. Edwards, individually, did not appeal.

## II.    STANDARDS OF REVIEW

Several standards of review govern this appeal. We review *de novo* the district court's interpretation and application of 12 U.S.C. § 1821 and, correspondingly, the dismissal of Placida's request for declaratory judgment and award of setoff. See Aguilar v. Fed. Deposit Ins. Corp., 63 F.3d 1059, 1061 (11th Cir. 1995). We also review *de novo* a district court's interpretation of contractual attorneys' fee provisions. Frankenmuth Mut. Ins. Co. v. Escambia Cnty., 289 F.3d 723, 728 (11th Cir. 2002). We review a district court's exclusion of expert testimony for an abuse of discretion. Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1334 (11th Cir. 2010).

9

## III.    DISCUSSION

### A.    Dismissal of Declaratory Judgment Count

We address first the district court's dismissal of Placida's request for declaratory judgment that the FDIC's repudiation of the Construction Loan Agreement terminated both Placida and the FDIC's obligations under the Construction Loan Agreement, and declaring the Note, Mortgage, and Guaranty of no further force or effect.  We interpret and apply § 1821 and conclude the district court erred as a matter of law in dismissing Placida's declaratory judgment claim insofar as Placida requested a declaration terminating the Construction Loan Agreement, Note, and Mortgage.

As noted above, the district court dismissed plaintiffs' declaratory judgment count, concluding the requested relief was barred by FIRREA's anti-injunction provision, 12 U.S.C. § 1821(j), which states:

> *Except as provided in this section*, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j) (emphasis added). The district court reasoned that the FDIC's powers and functions include "collect[ing] all obligations and money due the institution" and "preserv[ing] and conserv[ing] the assets and property of such institution," 12 U.S.C. § 1821(d)(2)(B)(ii) and (iv), and granting the requested

10

declaratory relief would affect these powers and functions. As such, the district court dismissed the declaratory judgment count as barred by § 1821(j).

We conclude the district court had subject matter jurisdiction over Placida's declaratory judgment claim under § 1821(d)(6), which provides for *de novo* judicial review of claims that have gone through § 1821(d)'s administrative claims process. See 12 U.S.C. § 1821(d)(6)(A)(ii). Section 1821(d)(13)(D) provides as follows:

> *Except as otherwise provided in this subsection*, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added). "The '[e]xcept as otherwise provided in this subsection' language quoted above refers to subsection (d) of § 1821." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B., 28 F.3d 376, 383 (3d Cir. 1994) (quoting § 1821(d)(13)(D)).

Subsection (d), in turn, provides for *de novo* district court review of claims that have been exhausted through the administrative claims process. 12 U.S.C. § 1821(d)(6); see also Bank of Am. Nat'l. Ass'n v. Colonial Bank, 604 F.3d 1239,

11

1244 (11th Cir. 2010) ("Congress contemplated the reality that the FDIC may err in its determination of receivership claims and provided all claimants with the remedy of *de novo* review in federal court of the FDIC's claims determination."). Specifically, § 1821(d)(6), entitled "Provision for agency review or judicial determination of claims" provides as follows:

> …
>
> Before the end of the 60-day period beginning on the earlier of--
>
> …
>
> (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
>
> (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),
>
> the claimant may . . . file suit on such claim . . . in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located . . . (*and such court shall have jurisdiction to hear such claim*).

12 U.S.C. § 1821(d)(6)(A) (emphasis added).

Here, Placida timely filed a claim with the FDIC. Placida's claim (like its request for declaratory judgment) included a request for termination of all loan documents, including the Construction Loan Agreement, Note, Mortgage, and Guaranty. The FDIC issued a Notice of Disallowance of Claim on September 1, 2009, stating (incorrectly) that the loan had been in default since October 2008 and

instructing Placida of its right to file suit pursuant to 12 U.S.C. § 1821(d)(6). Within 60 days of the denial, Placida filed suit on the claim in the Middle District of Florida, the district within which Freedom Bank was located. Subsection 1821(d)(6) thus provides for *de novo* judicial review of Placida's administratively exhausted claim for termination of the Construction Loan Agreement, Note, and Mortgage.[8] Cf. Interface Kanner, LLC v. JPMorgan Chase Bank, 704 F.3d 927, 934 (11th Cir. 2013) (holding district court did not have jurisdiction over FDIC's request for declaratory relief because claimant, against whom such relief was sought, had not exhausted the § 1821(d) administrative claims process).

Section 1821(j)'s anti-injunction provision does not strip courts of the jurisdiction provided by § 1821(d)(6). Indeed, the plain language of § 1821(j) provides, "*Except as provided in this section*, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. § 1821(j) (emphasis added). "*[T]his section*," namely § 1821(d)(6), provides for *de novo* judicial review of administratively exhausted claims, and § 1821(j) does not, on its face, disturb that review. See United States v.

---

[8] Placida is not entitled to judicial review of its request for termination of the Guaranty. The Guaranty was provided by Sheryl A. Edwards and Michael B. Edwards, individually, and Placida does not have standing to request relief related to the Guaranty. Additionally, as noted by the district court, the individual plaintiffs Sheryl A. Edwards and Michael B. Edwards failed to exhaust their claims and are therefore not entitled to judicial review. The district court was correct in determining it was without jurisdiction to grant any relief as to the Guaranty.

Zuniga–Arteaga, 681 F.3d 1220, 1223 (11th Cir. 2012) (when interpreting a statute, "[T]he starting point is the language of the statute itself. . . . [W]e analyze the language of the provision at issue, the specific context in which the language is used, and the broader context of the statute as a whole.") (quotation, citations, and alterations omitted).

Moreover, our precedent in Bank of America v. Colonial Bank, 604 F.3d 1239 (11th Cir. 2010), supports the conclusion that § 1821(j) does not strip a court of the *de novo* judicial review afforded by § 1821(d)(6). Bank of America sued Colonial Bank alleging Colonial wrongfully refused to return thousands of mortgage loans and their proceeds, to which Bank of America had legal title. Id. at 1241. The district court entered a temporary restraining order against Colonial Bank, prohibiting the bank from taking any action with respect to the disputed assets. Id. The next day, the FDIC was appointed receiver for Colonial and was substituted as defendant in the suit. Id. The district court then converted the temporary restraining order into a preliminary injunction against the FDIC, enjoining the FDIC as receiver from taking any action with respect to the disputed assets. Id.

On appeal, we concluded that § 1821(j) stripped the court of jurisdiction to enter the preliminary injunction. Id. at 1242–45. We reasoned that the FDIC's powers and functions included transferring assets of the failed institution, paying

14

valid obligations of the failed institutions, and determining all claims against the institution in accordance with the comprehensive administrative claims procedure set forth in § 1821(d)(3)–(13), and enjoining the FDIC from transferring the disputed assets would interfere with these functions. Id. at 1243.

We expressly noted, however, "The operation of § 1821(j) does not leave Bank of America without a remedy. Its claim is one that can and should be pursued through the administrative claims process." Id. at 1246. We instructed Bank of America to file its claim in the administrative claims process, and then, if necessary, turn to the courts for *de novo* judicial review. Id. at 1247.

Placida complied with the instructions we provided Bank of America. Placida pursued its claim for termination of the loan documents in the administrative claims process.[9] Once that claim was denied, Placida timely sought judicial review. The district court therefore had jurisdiction over Placida's request

---

[9] The FDIC has not contended, either in its Notice of Disallowance of Claim or on appeal, that Placida's request for termination of the loan documents was not properly brought as an administrative claim. Our Circuit has not addressed whether claims for declaratory relief can be brought through the claims administration process. The Third Circuit Court of Appeals has held that the jurisdictional bar of § 1821(d)(13)(D) and the administrative claims procedures have concurrent scope. Hudson United Bank v. Chase Manhattan Bank of Conn., 43 F.3d 843, 849–50 (3d Cir. 1994). The plain language of § 1821(d)(13)(D) includes declaratory judgment actions, as "a declaratory judgment action *is* an 'action seeking a determination of rights.'" Nat'l Union Fire Ins. Co., 28 F.3d at 385 (emphasis in original). It follows, then, that a declaratory judgment action may be brought as an administrative claim.

for declaratory relief pursuant to 12 U.S.C. § 1821(d)(6), and this jurisdiction is not stripped by § 1821(j).[10]

Our jurisprudence on § 1821(j) is not to the contrary. In RPM Investments, Inc. v. Resolution Trust Corp., 75 F.3d 618 (11th Cir. 1996) and Bursik v. One Fourth Street North, Ltd., 84 F.3d 1395 (11th Cir. 1996), we recognized the broad reach of § 1821(j) and held § 1821(j) barred certain equitable claims against the FDIC or the RTC as receiver or conservator. RPM Invs., 75 F.3d at 620–621; Bursik, 84 F.3d at 1397. Neither RPM Investments nor Bursik presented a claimant who had exhausted § 1821(d)'s administrative claims process. With our holding today, we do not narrow the broad scope of § 1821(j) or alter our prior precedent on jurisdiction pursuant to § 1821(j) when there is no administrative claim. Rather, we reach an issue not reached by our prior precedent—jurisdiction over an equitable claim when a claimant has exhausted the administrative claims process— and conclude that § 1821(j) does not strip the court of jurisdiction otherwise conferred by § 1821(d)(6).

To hold otherwise would raise due process concerns. Cf. Bueford v. Resolution Trust Corp., 991 F.2d 481, 486 (8th Cir. 1993) ("Since the language of [FIRREA] expressly provides for judicial review after exhaustion of the

---

[10] We emphasize again, see supra note 8, that the district court is without jurisdiction to grant any relief as to the Guaranty, which was executed by Sheryl A. Edwards and Michael B. Edwards, individually.

16

administrative procedures, [plaintiff] cannot prevail on her claim that FIRREA's administrative procedures deny her due process by making judicial review unavailable."). We note that there is no binding precedent directly on point in this circuit or elsewhere, but we find the reasoning of our sister circuit in Freeman v. Federal Deposit Insurance Corp., 56 F.3d 1394 (D.C. Cir. 1995), instructive. The District of Columbia Circuit evaluated a challenge of § 1821(d) and § 1821(j) on due process grounds. The FDIC, as receiver of Madison Bank, initiated non-judicial foreclosure proceedings on the Freemans' residence and office building. Id. at 1397. Shortly thereafter, the Freemans brought suit seeking, inter alia, to enjoin the foreclosure of their residence and determine the rights of the parties with respect to certain notes that related to the foreclosure. Id. The district court ruled against the Freemans on summary judgment, and the Freemans appealed. Id. at 1398.

On appeal, the court concluded that § 1821(j) barred the court from granting the relief requested by the Freemans, and, because the Freemans did not file any of their claims through the administrative claims process, § 1821(d)(13)(D) barred the court from hearing the claims. Id. at 1398–1402. As to the Freemans' argument that they were deprived of due process, the court noted that, under some circumstances, the denial of injunctive relief under § 1821(j) could constitute a violation of due process. Id. at 1403 (citing Nat'l Trust for Historic Pres. v. Fed.

17

Deposit Ins. Corp., 21 F.3d 469 (D.C. Cir. 1994), cert. denied, 513 U.S. 1065, 115 S. Ct. 683, 130 L. Ed. 2d 615 (1994)). The court also noted that the jurisdictional bar of § 1821(d) might implicate due process concerns by denying an aggrieved party of any avenue of relief, administrative or judicial. Freeman, 56 F.3d at 1403. While the court concluded the Freemans suffered no due process violation because they "had an opportunity to present their claims to the FDIC, and to have those claims resolved through the administrative claims process prior to foreclosure, subject to *de novo* judicial review in the district court." id., the court explained, had the Freemans exhausted their claims and sought *de novo* review as prescribed in § 1821(d), and had that review been precluded by § 1821(j), "this might so tie the reviewing court's hands that the court would be unable to grant meaningful predeprivation relief, bringing the constitutional adequacy of the complainant's predeprivation review into question." Id. at 1405.[11]

---

[11] The Freeman court's full explanation is as follows:

> We do not know, and cannot speculate, what the outcome would have been had the Freemans exhausted their administrative remedies. Nonetheless, one possible outcome gives us pause. If the complainant's administrative claims are disallowed and the complainant proceeds to seek *de novo* judicial review as prescribed in § 1821(d), then § 1821(j) on its face would appear to bar the district court from granting injunctive or declaratory relief, or rescission of the underlying agreement, at least to the extent the relief granted would "restrain" the FDIC from exercising its powers as receiver. In some circumstances this might so tie the reviewing court's hands that the court would be unable to grant meaningful predeprivation relief, bringing the constitutional adequacy of the complainant's predeprivation review into question. But that certainly is not what actually transpired here, nor is there any reason to assume that if the Freemans had proceeded through the administrative claims process they would have faced such

Placida's posture fits squarely into <u>Freeman's</u> hypothetical. Placida exhausted its claim for declaratory relief through the administrative claims process. To prevent Placida from seeking relief pursuant to § 1821(d), on the grounds that § 1821(j) precludes such relief, ignores the "[e]xcept as otherwise provided herein" language of § 1821(j) and would otherwise deprive Placida of meaningful predeprivation review and due process.

We acknowledge that the Third Circuit Court of Appeals has suggested that barring jurisdiction over declaratory judgment actions not seeking a right to payment in both administrative proceedings and courts of law would not violate due process. <u>See</u> <u>Nat'l Union Fire Ins. Co.</u>, 28 F.3d at 389–391. Appellants National Union Insurance Company and Gulf Insurance Company sought declaratory judgment declaring they had the right to rescind certain insurance policies. <u>Id.</u> at 381. The district court dismissed the declaratory judgment count, concluding it lacked subject matter jurisdiction under § 1821(d)(3) and (d)(13)(D),

---

a problem. The Freemans might have won relief at the agency level. Even if they won no relief at that stage, the factual and legal issues might have appeared in a wholly different light by the time they sought judicial review. Finally, even if a constraint like the one we have described were to arise at the stage of judicial review, the reviewing court might construe the statute so as to avoid constitutional difficulties. We are in no position at this juncture to foretell whether such a case might ever arise, what it might look like, or how it might be resolved. It would be premature and beyond the scope of our Article III powers to read a judicially-crafted exemption into either § 1821(d) or § 1821(j) in anticipation of theoretically possible yet only dimly perceived due process concerns that are not squarely presented by the case before us.

56 F.3d at 1405 (citations omitted).

and also concluded appellants were jurisdictionally barred from raising their rescission theory as an affirmative defense to the counterclaim brought against them by the Resolution Trust Corporation, as receiver of the insured City Savings, F.S.B., seeking to collect on the policies. Id. at 379–381.

On appeal, the Third Circuit concluded appellants' declaratory judgment action fell within the plain language of § 1821(d)(13)(D)'s jurisdictional bar, which bars "any action seeking a determination of rights with respect to [] the assets of any depository institution." Id. at 385. Appellants did not pursue their request for rescission through the administrative claims process, and the court, in dicta, stated that, even if appellants were precluded from seeking such relief through the administrative claims process, a bar to judicial review would not violate due process so long as appellants could raise the rescission theory as an affirmative defense in a later proceeding. Id. at 387–392.

We need not reach today whether National Union's dicta is generally correct, as National Union explicitly did not reach Placida's due process concern, that is, the due process concern posed by barring judicial review of an administratively exhausted claim. See id. at 392 ("We do not reach the issue of whether National Union and Gulf's action could have qualified for the exception to the jurisdictional bar for claims that have been submitted through the administrative claims process had they filed a timely administrative claim.").

20

Moreover, the Third Circuit concluded, subsequent to National Union, that the administrative claims procedures of § 1821(d) and the jurisdictional bar of § 1821(d)(13)(D) have concurrent scope, thereby avoiding the possibility raised in National Union that § 1821(d)(13)(D) could bar a claim that was not eligible for the administrative claims procedure. Hudson United Bank v. Chase Manhattan Bank of Conn., 43 F.3d 843, 849–50 (3d Cir. 1994).

Notwithstanding, we note that the Third Circuit's due process solution (permitting Placida to raise rescission as an affirmative defense in a suit to collect on the Note and Mortgage) is untenable for Placida. As the FDIC repeatedly noted in its briefs and at oral argument, the FDIC, after suit was commenced, sold the Note and Mortgage to Multibank. To deprive Placida of the opportunity to be heard in this proceeding, which was commenced after Placida administratively exhausted its claim and while the FDIC still owned the loan documents, does not comport with due process. See Fuentes v. Shevin, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994, 32 L. Ed. 2d 556 (1972) ("opportunity to be heard must be granted at a meaningful time and in a meaningful manner") (internal quotation and citation omitted).

Indeed, the National Union court itself recognized, "if and when the [FDIC] seeks to use § 1821(d)(13)(D) unconstitutionally, it would seem that the courts should deem application of § 1821(d)(13)(D) unconstitutional *as applied* in that

21

case, and take jurisdiction over the case." Id. at 392 (emphasis in original). As applied to this case, barring judicial review of Placida's properly exhausted declaratory judgment claim, whether pursuant to § 1821(j) or § 1821(d)(13)(D), would violate Placida's due process rights and render FIRREA's application unconstitutional. We must construe FIRREA so as to avoid constitutional difficulties, Int'l Ass'n of Machinists v. Street, 367 U.S. 740, 749, 81 S. Ct. 1784, 1790, 6 L. Ed. 2d 1141 (1961) ("Federal statutes are to be so construed as to avoid serious doubt of their constitutionality."), so we conclude that the district court had subject matter jurisdiction over Placida's declaratory judgment claim.[12]

Having found subject matter jurisdiction, we still leave to the district court to address, in the first instance, under what circumstances Placida may proceed in this action with its declaratory judgment claim, given that, subsequent to commencement of the action, the FDIC apparently transferred the Note and Mortgage to Multibank. The district court dismissed Placida's declaratory judgment claim on a facial attack to subject matter jurisdiction, wherein the court considered the allegations of the complaint as true and did not go beyond the four corners of the complaint. The district court did not determine whether the

---

[12] We also conclude that allowing consideration of Placida's declaratory request on *de novo* judicial review, after exhaustion of the administrative claims process, is not inconsistent with the general goals of Congress in passing FIRREA, which include enabling the receiver to determine creditors' claims and value assets. It is of critical importance to the FDIC and subsequent purchasers of the failed bank's assets to understand the value of the assets to be transferred prior to their sale and transfer.

22

declaratory judgment claim was barred because of the transfer to Multibank or whether Multibank is an indispensable party, and the parties, in their briefs on appeal, do not address the transfer in the context of the declaratory judgment claim.

Importantly, we cannot, on appeal, determine whether Placida's declaratory judgment claim is barred because of the transfer to Multibank, or whether Placida may proceed with the declaratory judgment claim against the FDIC under Federal Rule of Civil Procedure 25(c), because we do not have of record on appeal the agreement governing the transfer of assets from the FDIC to Multibank.[13] We therefore cannot conclude whether Multibank is a successor-in-interest to the FDIC's liabilities on the Note and the Mortgage, whether Multibank can be bound by a judgment as to the value of those assets, or whether Multibank should be substituted for or joined with the FDIC in this action.

## B.    Allowance of Setoff

We turn next to the district court's allowance of setoff and conclude the district court erred in allowing setoff because setoff violates the distribution scheme set forth in 12 U.S.C. § 1821(d)(11). Section 1821(d)(11) of FIRREA establishes a distribution priority for claims to the financial institution's assets:

> Subject to section 1815(e)(2)(C) of this title, amounts realized from
> the liquidation or other resolution of any insured depository institution

---

[13] Federal Rule of Civil Procedure 25(c) provides, "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

23

by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:

(i) Administrative expenses of the receiver.

(ii) Any deposit liability of the institution.

(iii) Any other general or senior liability of the institution (which is not a liability in clause (iv) or clause (v)).

(iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).

(v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

12 U.S.C. § 1821(d)(11)(A).[14] Section 1821(d)(10)(A) authorizes the FDIC, as receiver, to "pay creditor claims . . . in such manner and amounts as are authorized under this chapter," and § 1821(i)(2) limits an unsecured general creditor's claim to only a *pro rata* share of the proceeds from the liquidation of the failed institution's assets. See Adams v. Zimmerman, 73 F.3d 1164, 1171 (1st Cir. 1996); Resolution Trust Corp. v. Titan Fin. Corp., 36 F.3d 891, 892 (9th Cir. 1994).

In Battista v. Federal Deposit Insurance Corp., applying §§ 1821(d)(10)(A), (d)(11)(A), and (i)(2), the Ninth Circuit Court of Appeals held claims for contract repudiation damages under § 1821(e) are subject to the distribution priority of §

---

[14] 12 U.S.C. § 1815(e)(2)(C) concerns distribution priority under the FDIC's insurance scheme.

24

1821(d)(11) and may be paid with receivership certificates (also referred to as Certificates of Award), as opposed to cash. 195 F.3d 1113, 1121 (9th Cir. 1999). Placida does not contend that § 1821(d)(11)(A)'s distribution scheme does not apply to Placida's money judgment for repudiation damages, or that Placida should have a higher priority than that accorded an unsecured general creditor in § 1821(d)(11)(A)'s distribution scheme. Placida also does not dispute that its money judgment for repudiation damages may be paid with receivership certificates.[15] Indeed, Placida does not address Battista at all in its briefs.

We concur with the Ninth Circuit's holding that repudiation damages are subject to the distribution scheme of § 1821(d)(11)(A) and may be paid with receivership certificates. Pursuant to § 1821(i)(2), Placida is entitled to only a *pro rata* share of Freedom Bank's liquidated assets to satisfy its money judgment for repudiation damages. Allowing Placida to setoff, dollar-for-dollar, its repudiation damages against monies owed to the FDIC or its successors provides Placida full payment on its repudiation claim, exceeds the *pro rata* share permitted by § 1821(i)(2), allows Placida to jump the line in front of higher-priority creditors, and

---

[15] The FDIC pled as an affirmative defense, "To the extent the FDIC as Receiver is required to pay damages to Plaintiffs, it may only be required to do so in accordance with 12 U.S.C. § 1821(d)(11) of FIRREA . . . . [T]he Plaintiffs [sic] only remedy against the FDIC as Receiver to recover damages would be limited to the recovery of Receivership Certificates." In its Amended Trial Brief, Placida agreed with this defense.

25

violates the distribution scheme set forth in FIRREA.[16] See Battista, 195 F.3d at 1116 ("To require the FDIC to pay certain creditors in cash would allow those creditors to 'jump the line,' recovering more than their pro rata share of the liquidated assets, if the financial institution's debts exceed its assets.") (citation omitted). We conclude, therefore, that the district court erred in awarding setoff.

## C.    Attorneys' Fee Award

We turn next to the district court's award of attorneys' fees in favor of Placida. The district court concluded the loan documents should be construed together, and "[t]he attorney fee provisions of the note and mortgage, together with the reciprocal provisions of Fla. Stat. § 57.105(7), allow the prevailing party to recover its reasonable fees and costs. Thus, Placida is entitled to an award of its reasonable attorney's fees and costs." Assuming, *arguendo*, that the loan documents should be construed together, we reverse the district court's award of fees because neither the Note nor the Mortgage contains an attorneys' fee provision providing for fees in the instant suit.

The attorneys' fee provisions in the Note and Mortgage are limited to actions to collect on the Note and Mortgage. The fee provision in the Note provides, "[I]n case this Note is collected by law or through an attorney at law, or

---

[16] The cases cited in the district court's order are not contrary, as these cases do not discuss whether permitting setoff violates FIRREA's distribution priority scheme.

under advice therefrom, the undersigned agrees to pay all costs of collection, including reasonable attorney's fees." The fee provision in the Mortgage similarly provides:

> In the event of default under the terms of this Mortgage, the Note, or any other loan documents executed in connection herewith . . . Mortgagor shall pay all costs, expenses and reasonable attorneys' fees incurred in the collection (whether by suit or otherwise) hereof, including those costs, expenses and reasonable attorneys' fees incurred in appellate proceedings.

It is undisputed that this is not an action to collect on the loan documents, and the fee provisions in the Note and Mortgage therefore do not apply to this action.[17]

Furthermore, Section 57.105(7), Florida Statutes, which provides for reciprocity of prevailing party attorneys' fee provisions, cannot be used to expand the scope of contractual fee provisions. See Escambia Cnty. v. U.I.L. Family Ltd. P'ship, 977 So. 2d 716, 717 (Fla. Dist. Ct. App. 2008) (reciprocity provided for in § 57.105(7) "is limited to the specific terms of the attorney's fees provision in the contract."). Because the contractual fee provisions in the Note and Mortgage would not permit the FDIC (or Freedom Bank) to recover attorneys' fees in this case, Placida cannot, pursuant to § 57.105(7), recover fees under those provisions. See

---

[17] In its brief, Placida asserts wholesale that "there are at least 3 contractual provisions contained in the loan documents that provide for prevailing party attorney's fee [sic]," but does not explain how the plain language of any of those fee provisions applies to the instant action. Additionally, contrary to Placida's assertion in its briefs, the district court did not award fees on the basis of the fee provision in Paragraph 6.9 of the Loan Agreement. In any event, the fee provision in the Loan Agreement, like those in the Note and Mortgage, does not provide for prevailing party attorneys' fees in the instant suit.

Subway Rests., Inc. v. Thomas, 860 So.2d 462, 463 (Fla. Dist. Ct. App. 2003) (holding tenant was not entitled under reciprocal fee statute to attorneys' fees for lawsuit for wrongful eviction and breach of contract because the attorneys' fees provision of the lease only applied to rent collection actions); Anderson Columbia Co., Inc., v. Fla. Dep't of Transp., 744 So.2d 1206, 1207 (Fla. Dist. Ct. App. 1999) (holding contractor was not entitled to recover attorneys' fees under reciprocal fee statute where contract provided for attorneys' fees if the department sued contractor on the bond and the suit at issue was for breach of contract).

**D.    Exclusion of Expert Testimony**

We turn finally to the district court's exclusion of a portion of the testimony of Placida's expert, Richard W. Bass. The district court struck the portion of Mr. Bass' testimony relating to the Class II transaction-related discount, reasoning that the proposed testimony as to the Class II discount failed to meet the standards of admissibility of expert testimony under Daubert and Federal Rule of Evidence 702.[18] The district court did not conduct a Daubert hearing, but instead relied on Mr. Bass' deposition testimony and Mr. Bass' affidavit, submitted in response to the FDIC's Daubert motion. Placida contends on appeal that the district court abused its discretion in striking Mr. Bass' testimony without conducting a Daubert

---

[18] Mr. Bass contended the Placida property was subject to two discounts: a Class I property-related discount of 40 percent and a Class II transaction-related discount of 28 percent. The district court struck Mr. Bass' testimony as to the Class II transactional discount only.

28

hearing.[19] We reiterate that we review a district court's decision on whether to hold a Daubert hearing, as well as a district court's ruling on the admissibility of expert testimony, only for an abuse of discretion. Kilpatrick, 613 F.3d at 1334; Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1113 (11th Cir. 2005). "We are also mindful of the Supreme Court's directive that 'it is very much a matter of discretion with the court whether to receive or exclude the evidence,' and that an 'appellate court will not reverse . . . unless the ruling is manifestly erroneous.'" Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1312–13 (11th Cir. 2000) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). With this deferential standard in mind, we conclude the district court did not abuse its discretion in failing to hold a Daubert hearing and affirm the district court's exclusion of Mr. Bass' testimony as to the Class II discount.

Federal Rule of Evidence 702 lays out the circumstances in which expert testimony is admissible:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[19] Placida does not argue on appeal that Mr. Bass' expert report, deposition testimony, and affidavit adequately laid the foundation for admission. Rather, Placida contends only that the district court erred by excluding Mr. Bass' testimony without a live Daubert hearing.

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court "made abundantly clear in Daubert [that] Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing Daubert, 609 U.S. at 587 n.7, 597, 113 S. Ct. at 2795 n.7, 2798); see also United States v. Jayyousi, 657 F.3d 1085, 1106 (11th Cir. 2011). In performing this function, the court must consider whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citation omitted).

Importantly, "the burden of laying the proper foundation for the admission of expert testimony rests with its proponent." Cook, 402 F.3d at 1113 (citation

30

omitted). "[T]he proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." Id. at 1107 (citation omitted).

Accordingly, it is Placida's burden to lay the proper foundation for the admission of Mr. Bass' testimony. Placida first had the opportunity to meet this burden through Mr. Bass' expert report, filed before Mr. Bass' deposition. After the FDIC filed its Daubert motion, in which the FDIC argued Mr. Bass had "no market evidence for his opinion" regarding the Class II discount and "his 28% figure is nothing more than a number he picked out of thin air," Placida was given—and indeed availed itself of—further opportunity to support Mr. Bass' methodology. Placida submitted an affidavit from Mr. Bass in response to the FDIC's Daubert motion. The district court relied on this affidavit, in addition to Mr. Bass' deposition testimony, in concluding Placida failed to adequately lay the foundation for Mr. Bass' proposed testimony regarding the Class II discount.[20] This was not a complicated case, Cook, 402 F.3d at 1113 ("Daubert hearings are not required, but may be helpful in 'complicated cases involving multiple expert witnesses.'") (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 564 n.21 (11th Cir. 1998)), and the district court was under no obligation to

---

[20] We agree with Placida that it was under no obligation to cross-examine Mr. Bass at his deposition. It was still Placida's burden, though, to lay the proper foundation for his testimony, and Placida was not entitled to a Daubert hearing to meet this burden. Cook, 402 F.3d 1092.

conduct a <u>Daubert</u> hearing to provide Mr. Bass an additional opportunity to lay the foundation for his testimony. <u>See</u> <u>Cook</u>, 402 F.3d at 1113 (holding trial court did not abuse its discretion in excluding expert's testimony based on expert report and without <u>Daubert</u> hearing: "We recognize that a <u>Daubert</u> hearing before the trial court might have given Cook an additional opportunity to meet this burden, but we note that the trial court was under no obligation to hold one."); <u>Miller v. Baker Implement Co.</u>, 439 F.3d 407, 412 (8th Cir. 2006) (holding district court did not abuse its discretion by failing to hold a <u>Daubert</u> hearing and party had adequate opportunity to present his arguments through legal memorandum addressing <u>Daubert</u> and affidavits detailing expected testimony); <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 154 (3d Cir. 2000) (holding district court did not abuse its discretion in failing to hold <u>Daubert</u> hearing where court already had before it expert reports, deposition testimony, and expert affidavit in response to summary judgment motions). In sum, we conclude Placida was given adequate opportunity to meet its burden under Rule 702 and simply failed to do so. We accordingly affirm the district court's exclusion of Mr. Bass' testimony as to the Class II discount.

## IV.    CONCLUSION

We conclude the district court had subject matter jurisdiction, pursuant to 12 U.S.C. § 1821(d)(6), over Placida's declaratory judgment claim and reverse the district court's dismissal of the claim. We further conclude that permitting Placida

32

to setoff its repudiation damages against other monies owed to the FDIC or its successors violates the distribution priority set forth in 12 U.S.C. § 1821(d)(11)(A), and Placida was not entitled to attorneys' fees under the provisions in the Note and Mortgage. We therefore reverse the district court's award of setoff and attorneys' fees and vacate in part the judgment of the district court. Finally, we affirm the district court's exclusion of Mr. Bass' testimony as to the Class II discount. We remand for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.